STADLER ET AL., APPELLANTS, *v.* CITY OF HELENA,. RESPONDENT.

(No. 3,143.)

(Submitted September 11, 1912. Decided September 25, 1912.)

[127 Pac. 454.]

*Cities and Towns—Special Improvements—District Sewers—Statutes Applicable—Jurisdiction of Council—Injunction.*

Cities and Towns—District Sewers—Statutes—Injunction.
  1.  Defendant city proceeded under the mode of procedure prescribed by sections 3396 and 3397, Revised Codes, to establish a special improvement district for the construction of a district sewer. Sections 3373 and 3374 provide, *inter alia,* that such a sewer may be constructed whenever the owners of one-third of the feet frontage of real property within that part of the district affected thereby petition therefor, or whenever the council, by a vote of a majority of its members, decides that it is necessary for sanitary purposes. Under section 3382, only property bordering the proposed sewer is liable for the payment of the cost of construction, while under sections 3396 and 3397, property not adjacent to the contemplated improvement may be assessed to defray the expense. Plaintiff alleged in his complaint to secure an injunction restraining the city from selling his real property for delinquent special assessments that no portion of the owners of realty within the district had petitioned for the construction of the sewer, nor had the council, by a vote of a majority of its members, decided that the sewer was necessary for sanitary purposes, and that his property does not border upon it. The district court sustained a general demurrer to the.complaint. *Held,* error, in that sections 3373, 3374 and 3382 must be read in connection with 3396 and 3397, and that by disregarding their provisions the council did not acquire jurisdiction to. proceed.

Complaint—When Demurrer Does not Lie.
  2.  If upon any theory a complaint states a cause of action, a demurrer to it does not lie.

Statutory Construction.
  3.  Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the latter are controlling.

Same.
  4.  Where one statute deals with a subject in general and comprehensive terms, and another with a part of the same subject in a more minute and definite way, the two must be read together and harmonized, if possible; but to the extent of any necessary repugnancy between them, the definite will prevail over the general statute.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.* .

ACTION by Louis Stadler and another to secure an injunction restraining the city of Helena from selling certain real property

for delinquent special assessments. Defendant had judgment and plaintiffs appeal. Reversed and remanded.

*Mr. James A. Walsh,* and *Mr. Massena Bullard,* for Appellants, submitted a brief; *Mr. Walsh* argued the cause orally.

*Messrs. H. S. Hepner, C. W. Wiley,* and *Edward Horsky* submitted a brief in behalf of Respondent; *Mr. Horsky* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This suit was instituted to secure an injunction restraining the city of Helena from selling certain real property for delinquent special assessments. A general demurrer to the complaint was sustained, and plaintiffs, suffering judgment to be entered against them, appealed to this court. With certain exceptions hereafter to be noted, the facts of this case are identical with those in *Power* v. *City of Helena,* 43 Mont. 336, 116 Pac. 415, and need not be repeated here in detail. We are satisfied with our conclusions upon the questions in the *Power Case,* as they were presented and considered, and so far as they are involved here, are conclusive against the appellants. The principal ground relied upon in this instance for relief was not suggested, considered or determined in the *Power Case,* and is of first impression in this jurisdiction.

These delinquent special assessments were levied to defray the cost of constructing a district sewer to serve as an outlet for conveying away surface or drainage waters. The complaint sets forth the procedure adopted and pursued by the city, and then alleges: "(e) That the owners of property, within the said alleged Sewer District No. 17, owning one-third of the foot frontage of the real estate within the district affected thereby, did not petition the said city council to establish said alleged sewer district, or to construct said sewer, and the said city council did not, by a vote of the majority of its members, decide that the construction of said sewer was necessary for sanitary

46 Mont.—9

purposes.'' This allegation is admitted by the demurrer, and raises the question, not presented in the *Power Case:* Did the city council, nevertheless, acquire jurisdiction to proceed to create the district and construct the sewer? If such jurisdiction was acquired, then the decision in the *Power Case* is conclusive against appellants upon this branch of the case; but if such jurisdiction was not acquired, then the decision in the *Power Case* is not authority in this one. And whether jurisdiction was or was not acquired depends upon the construction to be given to sections 3367 *et seq.* of the Revised Codes of 1907. Those sections are but the compilation of House Bill 204 of the Acts of the Fifth Legislative Assembly, together with slight amendments made thereto in 1901, 1903 and 1905. The amendments made since 1907 do not affect the question presented here.

If we were called upon to determine the intention of the lawmakers from a consideration of the sections of the Code alone, the difficulties would be almost, if not quite, insuperable. But the study of the history of any legislation is always fruitful of results in ascertaining the purpose in view and the motive which prompted the legislature in its enactment. House Bill 204 (Laws 1897, p. 212) deals with the subject of special improvements in cities and towns, but the subject was not a new one for legislative consideration in this state. By an Act approved March 10, 1887, the subject was treated at great length in what was evidently designed to be a complete municipal Code. The Act was incorporated in the Compiled Statutes of 1887 as Chapter 22, Fifth Division, sections 315–440, both inclusive. Section 325 enumerated the powers of the city council, and subdivision 56 of that section gave the city authority ''to lay off the city in suitable districts for the purpose of establishing a system of sewerage and drainage, to provide such system,'' *etc.* Section 430 provided for levying special assessments against the property specially benefited, to defray the costs of grading, paving, macadamizing or otherwise improving any street, and provided, in part at least, the procedure to be followed, which was to be initiated by a petition of a majority of the resident

owners of the real estate to be affected by such improvement. Slight verbal changes were made in this section by the Act of 1889 (Laws 1889, p. 178) and the Act of 1893 (Laws 1893, p. 113), but they were not of any moment so far as the questions now presented are concerned. The provision for a petition by the property owners was superseded by the legislative declaration that the proceedings might be initiated by a two-thirds vote of the members of the city council. (Laws 1889, p. 178.) This last-mentioned Act, however, added to Chapter 22 of the Compiled Statutes five sections, some of which are material to our review. Added section 440B gave to the city council authority to establish sewer districts and to construct district sewers "in such manner and under such regulations as said council may deem expedient." Added section 440C provided for levying special assessments to meet the expense of constructing such sewer, each parcel of land in the district to be assessed according to benefits received. Chapter 22 was again amended by an Act of the Third Legislative Assembly, approved March 7, 1893 (Laws 1893, p. 113). To section 325 there was added subdivision 71, which authorized the city council to extend the time for paying special assessments over a period of three years, but the principal amendments made at that time are found in sections 440G and 440H, which were added to Chapter 22. These last-mentioned sections provide the procedure where special improvement districts are to be created for the purpose of grading, paving or otherwise improving streets or alleys, building sidewalks, constructing sewers or gutters, or making any other public improvement, including street sprinkling and tree planting, the payment for which is to be made by special assessments payable in installments covering a period of years. The procedure for the council is outlined in these added sections with great particularity. There was also added a section (440P) which provided that the method of procedure mentioned in added sections 440G and 440H should not be deemed exclusive, but the council might proceed under 430, 440B, 440C, or other sections of Chapter 22. When the Codes of 1895 were adopted, sections

430, 440G, 440H and 440P of Chapter 22 above were retained as sections 4818, 4819, 4820 and 4828, respectively, of the Political Code, but sections 440B and 440C were repealed by section 5182 of the Political Code. There was also enacted as a part of the Political Code, sections 4880–4899, inclusive, which deal with the same subject. Sections 4880 and 4881 provide the procedure for the creation of special improvement districts, for making street improvements, or for doing any or all work authorized by the Title in which those sections are found. Section 4892 classifies sewers as public, private and district sewers. Section 4894 deals with district sewers, and provides that a district sewer may be constructed in a district whenever a majority of the property holders, residents therein, petition therefor, or whenever it is necessary for sanitary or other purposes.

Such was the state of the laws upon the subject of special improvements when the legislature met in 1897. House Bill 204 specifically repealed all existing provisions upon the subject of special improvements, and in their stead apparently undertook to provide a complete Code upon the subject. But if it was the intention of the legislature to make plain the law upon the subject of special improvements, that very laudable purpose was nearly defeated by the means employed; for House Bill 204 is such a complex piece of patch-work, and contains so many inconsistent and incongruous provisions, as to make the law upon the subject uncertain in the extreme. For convenience, reference will hereafter be made to the sections of House Bill 204, by their numbers as they appear in the Revised Codes of 1907, and also by the numbers as they appeared in the original Act.

Section 3367[1] gives the city council authority to cause any street, avenue or alley to be paved, graded, curbed or macadamized, and sidewalks, sewers, gutters or other improvements to be made thereon, upon the same being ordered by a majority of all the members of the council.

Section 3368[2] refers to connections with sewer-pipes, water-pipes, gas-pipes,. *etc.*

Section 3369[3] authorizes the city council to provide a system for making such improvements and for the payment of the cost thereof, and provides that if the expense is to be met by special assessments, the council shall proceed as outlined in that section and section 3370[4], as follows: (1) Adopt a resolution of intention designating the boundaries of the district; (2) give notice (a) five days in a daily paper; (b) one issue of weekly paper; (c) post notices in three places, or (d) serve personally. The notice must describe the improvement to be made, give the estimated cost, fix a time for hearing objections and refer to the resolution for a description of the district boundaries. (3) Hearing. Written objections by owners or agents of two-thirds of the property to be affected stops proceedings. If such objections be not filed, the council acquires jurisdiction to proceed.

Sections 3371[5] to 3395[29], inclusive, deal with a variety of subjects to be considered later.

Sections 3396[30] and 3397[31] provide that if the city desires to create special improvement districts for grading, paving, constructing sewers, *etc.*, or making other public improvements of a similar nature as provided in the Act, and to meet the expense of the same by special assessments payable in installments, the council shall (1) enact an ordinance that the cost of the improvement shall be paid by special assessments; (2) adopt a resolution: (a) designating the number of the district; (b) describing its boundaries; (c) stating the character of the improvement; (d) giving approximate estimate of cost; and (e) fixing a time for hearing. (3) Publish the resolution (a) in daily paper for five days, or (b) in weekly for one issue. (4) Hearing. Either written or oral objections at the meeting by owners or agents of more than one-half in area of all property affected stops proceedings for six months. If such objections be not made, the council, by majority vote of all members, will finally adopt the resolution. The concluding sections, except section 3405[39], deal with the collection and disposition of the tax, the correction of errors, *etc.* Section 3405[39] provides that

the mode prescribed by sections 3396[30] and 3397[31] shall not be deemed exclusive, but the council may make public improvements as provided in other sections of the Chapter.

We have, then, in sections 3396[30] and 3397[31], if considered alone, a complete mode of procedure for establishing a **[1]** special improvement district for any of the purposes mentioned, and it is to be observed that there is not any substantial difference between this mode and that provided in sections 3369[3] and 3370[4]. Just what prompted the legislature to provide these two distinct but similar methods of procedure in the same Act for the same purpose is inconceivable. That neither method was intended to be exclusive is made apparent by the Act itself. The purposes for which a district might be created under either method are stated in such very general terms that the construction of a district sewer was apparently included in each. In fact, almost any public improvement imaginable might be said to be comprehended within the general terms employed.

If, then, we had only sections 3369[3] and 3370[4], and sections 3396[30] and 3397[31] and the concluding sections to consider, we would be fully justified in saying that the city council might pursue either of the two methods outlined in creating a sewer district and construct a district sewer, and that compliance with either method would be sufficient. But a consideration of the sections intervening between 3370[4] and 3396[30] renders such a conclusion impossible. Section 3371[5] classifies sewers as public, private and district sewers. Section 3372[6] deals with the subject of public sewers, which are to be paid for by appropriations from the general or sewer funds of the city. Section 3375[9] deals with private sewers, which are to be paid for by the respective owners. Sections 3373[7], 3374[8] and 3382[16] deal with district sewers, and provide that a district sewer may be constructed whenever (a) the owners of one-third of the feet frontage of real estate within that part of the district affected thereby petition therefor, or (b) whenever the council by a vote of a majority of its members decides

it is necessary *for sanitary purposes.* Provision is made for a hearing; but authority is given the council to proceed notwithstanding any objections which may be made. The character, dimensions and material of the proposed sewer must be prescribed. Section 3374[8] further provides: "They may be diminished, enlarged or extended by the council." Doubtless this sentence refers to the dimensions of the proposed sewer. Section 3376[10] relates to bridges; sections 3377[11] and 3378[12] to boards of public works, and sections 3379[13] and 3380[14] to the subject of obtaining private property for city use. Sections 3383[17] and 3384[18] refer to sewers which serve a double purpose. Sections 3381[15] and 3385[19] to 3389[23], inclusive, provide the method of assessing property for street grading, paving, *etc.* Sections 3390[24] to 3395[29], inclusive, refer to sprinkling districts.

If it was intended that the city council might create a special improvement district for the purpose of constructing a district sewer, by pursuing either the general method outlined in sections 3369[3] and 3370[4], or the other general method prescribed by sections 3396[30] and 3397[31], and wholly disregard the provisions of sections 3373[7], 3374[8] and 3382[16], then those latter sections are dead letters, without any force or effect whatever. But such a conclusion violates the most elementary rule of statutory construction. In *State* v. *Clemens,* 40 Mont. 567, 107 Pac. 896, the rule was stated as follows: "In order that the true meaning of the legislature may be determined and carried out, every word, phrase, term and provision of an Act must be considered, and none should be considered as unmeaning if a construction can be found which will give it effect." If the legislature had any purpose whatever in enacting 3373[7], 3374[8] and 3382[16], it was to place certain limitations and restrictions upon the council, by requiring, as conditions precedent to their right to order a district sewer constructed, the observance of the special requirements imposed by those sections, which are in addition to those provided in either of the general plans mentioned above. Those special requirements are (1) that the interested

property owners shall petition for the sewer; or (2) that the council shall determine that it is necessary *for sanitary purposes;* and (3) that the character, dimensions and material of the proposed sewer shall be prescribed. If these special requirements are inconsequential, they would have been omitted; but that the legislature deemed them important is evidenced by their incorporation in the law. Without them the statute gives ample authority to cities to organize sewer districts and construct district sewers, and provides methods of procedure for every detail of the work. But that the legislature was unwilling to permit the city to proceed under either of the general plans is emphasized by the repeated incorporation in the law of provisions applicable to district sewers alone at the very time the law provided general plans under which the sewers might have been constructed. In 1889 there was in force section 430, Chapter 22, Compiled Statutes, under which a district sewer might have been constructed; but notwithstanding that fact, the legislature enacted sections 440B and 440C above, applicable to district sewers alone, and those sections were permitted to remain in full force and effect until 1895, although in the meantime another general plan had been added in 1893 by the enactment of sections 440G and 440H, under which the same result might have been accomplished had the legislature so intended. And so, in 1895, when sections 440B and 440C were repealed, the legislature was apparently still unwilling to permit the city council to proceed under any one of the general plans then in operation, but enacted in lieu of the sections which it had repealed sections 4894 and 4895 of the Political Code, which added the special provisions applicable to district sewers alone to which reference has already been made. And thus the law continued until House Bill 204 was enacted, when all the provisions relating to special assessments were repealed and new provisions substituted, containing the two general plans mentioned above, under either of which a sewer district might have been created and a district sewer constructed if the legislature had been willing to leave the city council thus free to proceed. But by enacting sec-

tions 3373[7], 3374[8] and 3382[16], the legislature evinced
its intention to insist upon something more than either of those
general plans comprehended.  For instance, in proceeding under
sections 3396[30] and 3397[31] to create a sewer district and
construct a district sewer, if such could have been done, the
requirement imposed upon the council is to state the "charac-
ter of the improvement," and this might be done in very gen-
eral terms.  (*Mansur* v. *City of Polson,* 45 Mont. 585, 125 Pac.
1002.)  But for reasons satisfactory to the lawmakers, they
deemed that insufficient in case of a district sewer, and added
the requirements of section 3374[8] that the character, dimen-
sions and material of such sewer must be prescribed.  And in
this present action the city council, apparently apprehensive
that compliance with the provisions of section 3397[31] would
not be sufficient, undertook in the resolution for the creation
of this district to meet the added requirements of section
3374[8].  As originally adopted, section 3373[7] provided, as
one of the alternative conditions precedent to the council's right
to proceed in case of a district sewer, that the owners of a ma-
jority of feet frontage of the real estate affected should petition
for the construction of such sewer.  Doubtless, realizing the dif-
ficulty which would be encountered in obtaining the consent
of so large a proportion of property holders, the legislature in
1901 amended that section by reducing the number from a ma-
jority, or more than one-half, to one-third (Laws 1901, p. 79);
thus continuing to evince an intention to place these limitations
and restrictions upon the council which were not found in
either of the general plans referred to above.  And thus it will
be seen that from 1889 to the present time, although we have
had at all times general statutes under which a district sewer
might have been constructed if the legislature had so willed,
we have had upon our statutes special provisions relating to
district sewers alone; and the changes made in these special
provisions from time to time, as in 1895 and 1897, when the
restrictions were increased, and in 1901 when they were some-
what relaxed, most clearly evince a legislative intention that

these special provisions, whatever they were at any given time, should be observed.

But there is additional evidence of the same purpose. If proceedings are taken under sections 3396[30] and 3397[31], the special improvement tax is assessed against the property affected, according to the area; but if the special provisions in sections 3373[7], 3374[8] and 3382[16] are to be observed, then the special improvement tax for a district sewer must be assessed against the property specially benefited by the construction of the sewer "in proportion to the linear feet bordering said sewer." Under section 3396[30] and 3397[31], property not adjacent to the improvement might be assessed to defray the expense, while under sections 3373[7], 3374[8] and 3382[16] only property "bordering said sewer" can be made to pay any part of the expense of constructing a district sewer.

It is the general rule in this jurisdiction that a demurrer [2] to a complaint will not lie if upon any theory the complaint states a cause of action. If our construction of the statute is correct, then the complaint is proof against a general demurrer upon another ground. It appears from the complaint that plaintiffs' property does not border upon the sewer in question, but lies a considerable distance below the sewer outlet; and it is alleged by plaintiffs that their property cannot possibly receive any benefit whatever from the construction of such sewer. If the allegations of this complaint are true—and they are taken to be so for the purposes of this appeal—and if the provisions of sections 3373[7], 3374[8] and 3382[16] are to be given any effect, this property is not subject to assessment to pay the cost of such sewer; for section 3382[16] provides that the cost must be borne by the property benefited and "bordering said sewer"; and as if to add emphasis to the legislative declaration that only property bordering on the sewer can be made to pay the expense of its construction, section 3382[16] adds this provision as a guaranty or safeguard against the possible confiscation of property under the guise of assessing it for special improvements: "Provided, however, that when a lot

or tract of land situated upon a street or alley corner has been assessed, or is about to be assessed for the cost of sewer construction upon one side thereof, it shall not be assessed at any future time for the entire frontage upon the other street or alley, but shall have deducted therefrom as many linear feet as may have been assessed upon the other side, up to, but not to exceed fifty feet."

To say that the city council may proceed under sections 3396[30] and 3397[31], as the council did in this instance, and entirely ignore the special provisions of sections 3373[7], 3374[8] and 3382[16] amounts to a judicial repeal of those last-mentioned sections, and a declaration by the court that the legislature had no purpose whatever in their enactment, a conclusion which we cannot adopt. (*State* v. *Clemens,* above.) On the contrary, if we hold that the special requirements of sections 3373[7], 3374[8] and 3382[16] were intended to be and are imposed as additional to those mentioned in sections 3396[30] and 3397[31], or as supplanting those in the last-mentioned sections whenever there is a conflict, then we give meaning to all the sections of the statute and recognition to the elementary rules of statutory construction: "Where general **[3]** terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." (30 Cyc. **[4]** 1130.) "Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general statute." (30 Cyc. 1151.)

If the allegations of this complaint are true, then, in this instance, the city council, by ignoring the provisions of sections 3373[7] and 3374[8], did not acquire jurisdiction to proceed,

and because plaintiffs' property does not adjoin the sewer, it is not liable for assessments to defray the cost, under section 3382[16]. If the allegations of this complaint are true, the city council further erred in levying the tax according to the area of the lots within the district, instead of according to front footage as prescribed by section 3382[16] above. For these reasons the demurrer should have been overruled.

The judgment is reversed and the cause is remanded, with directions to overrule the demurrer.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied October 31, 1912.