SHAPARD ET AL., RESPONDENTS, *v.* CITY OF MISSOULA ET AL., APPELLANTS.

(No. 3,479.)

(Submitted May 7, 1914. Decided June 8, 1914.)

[141 Pac. 544.]

*Cities and Towns—Special Improvement Districts—Statutory Construction—Surplusage—City Council—Jurisdiction—How Acquired.*

Municipal Corporations—Special Improvement Districts—Statutes.

1. The provision of subdivision 80, section 3259, Revised Codes, lodging power in city councils to create special improvement districts for the purpose of improving the streets therein, and to charge the abutting property by special assessments for the cost thereof, *held* not to have been repealed by implication by Chapter 89, Laws of 1913.

Statutory Construction—Surplusage.

2. When words or expressions are found in a statute to which no meaning can be assigned consistent with the legislative intent as collected from the entire Act, they must be treated as surplusage and disregarded.

Cities and Towns—Special Improvement Districts—How Created.

3. Under Chapter 89, Laws of 1913, providing the procedure for the creation of special improvement districts, the successive steps to be taken in creating such district are: (1) The passage of a resolution of intention; (2) the publication of the required notice; (3) the hearing and determination of any protests filed, *etc.;* and (4) the ordering of the proposed improvements—the first three being made jurisdictional by section 3 of the Act.

Same—Jurisdiction—When Acquired.

4. Under section 6, Chapter 89, Laws of 1913, it is only after the lapse of fifteen days from the first publication of notice of intention

to create an improvement district and after all protests have been disposed of adversely to objecting property owners, that the city council shall be deemed to have acquired jurisdiction to order the improvement.

Same—Powers—Express and Implied.

5.  A municipal corporation can exercise only such powers as are expressly granted or necessarily implied in, or incidental to, the powers expressly granted, or those indispensable to the objects and purposes of the corporation, and any reasonable doubt as to the existence of power to do a particular thing must be resolved against the municipality.

Same—Mode of Exercise of Powers.

6.  Where the mode of exercising any power granted to a municipal corporation is pointed out in the statute, that mode must be pursued in all substantial particulars.

Same—Special Improvements—When Proceedings Void.

7.  The resolution of intention to create a special improvement district —the basis of the proceeding looking to the creation of the district— together with a notice of its adoption, is a condition precedent, the omission of which is fatal and renders all the subsequent proceedings nugatory.

[As to the propriety of the exercise of power by municipality by resolution, see note in Ann. Cas. 1913C, 1321.]

Same—Jurisdiction—How not Acquired.

8.  Where jurisdiction to proceed in the creation of an improvement district has not been acquired by an observance of the antecedent steps prescribed by Chapter 89, Laws of 1913, failure of any property owner to file with the city clerk his written objection to the regularity of the proceedings, within sixty days after the letting of the contract, cannot supply it.

Same—When Proceedings Abortive.

9.  Though a mere informality in the resolution of intention to create an improvement district would not have rendered the effort of the city council to acquire jurisdiction nugatory, if the subsequent steps had been pursued in conformity with the statute, the proceeding was abortive where a resolution of intention was deemed sufficient to bring about the creation of the district.

*Appeal from District Court, Missoula County; John E. Patterson, Judge.*

ACTION by Harry Shapard *et al.* against the City of Missoula *et al.*   Judgment for plaintiffs and defendants appeal.  Affirmed.

*Mr. Frank Woody,* for Appellant City of Missoula, and *Mr. Jas. M. Head,* of the bar of Boston, Massachusetts, for Appellant Maguire, each filed a brief, as well as one in reply to that of Respondents, and argued the cause orally.

The supreme court of California in construing laws relating to special improvements similar to the California statutes of 1911, page 730, have held that after the adoption of the resolu-

tion of intention and the hearing, the council must adopt a resolution ordering the work, and these decisions are based on the language used in the first two sentences contained in section 10 of the California law. By the omission of these sentences from the section 8 of the Montana law, it seems clear that the legislature intended to do away with the adoption of a second resolution, and to simply provide for the adoption of the resolution of intention, and for the hearing, and if objections were insufficient, that the city council, without the adoption of any further resolution, could proceed with the improvements.     (See 1 Page & Jones on Taxation, secs. 254, 777; *Hughes* v. *Parker,* 148 Ind. 692, 48 N. E. 243; *Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454; *Lucas* v. *City of San Francisco,* 7 Cal. 463; *Oakland Paving Co.* v. *Rier,* 52 Cal. 270; *Bank of Columbia* v. *Portland,* 41 Or. 1, 67 Pac. 1112; *Spaulding* v. *Baxter,* 25 Ind. App. 485, 58 N. E. 551.)     In this particular case the council having adopted a resolution of intention to create the district; having caused the notice of the passage of the resolution of intention to be published, and having heard and denied the objections filed, it acquired jurisdiction, and if, before entering into a contract for making the improvements in this district, it should have adopted a resolution creating a district or ordering the improvements made, this was merely a defect or irregularity, after jurisdiction acquired, and must be taken advantage of by filing the notice provided for in section 13 of the Act in question, and unless a notice which fully complied with the requirements of that section was filed with the city clerk within the time provided therein, this irregularity or defect has been waived by the plaintiffs.     (2 Page & Jones on Taxation, secs. 1337, 1026, 1027; *Power* v. *City of Helena,* 43 Mont. 336, 16 Pac. 415; *City of Burlington* v. *Quick,* 47 Iowa, 222; *Buckley* v. *City of Taccma,* 9 Wash. 253, 37 Pac. 441.)

*Mr. Frank A. Roberts,* for Respondents, submitted a brief and argued the cause orally.

· The city council passed no preliminary resolution of intention whatever, but, on the contrary did adopt Resolution 224–A,

thereby, according to its express terms, "creating special improvement district No. 23." In other words, the city council failed to take the preliminary steps necessary to be taken in order to acquire jurisdiction of the subject matter, and consequently all succeeding steps taken by the council were null and void.

Counsel argues that since the Act itself does not specifically provide for a second resolution, therefore such resolution is not necessary; but if the second resolution is provided for by necessary implication, and as well by the general scheme of making public improvements of this nature, then a second resolution is as essential as if specifically provided for. It is to be noted that the resolution, designated a "resolution of intention," so designated in sections 3, 4, 5, 6 and 7 of Chapter 89, Laws of 1913, in each instance apparently refers to a preliminary resolution to be passed before the creation of the district and ordering of the "contemplated work." In section 7, it specifically recognizes that subsequent resolutions must necessarily be passed, although none are specifically provided for by the Act itself. By section 6 it is provided "immediately thereupon, the city council shall be deemed to have acquired jurisdiction to order the proposed improvements"; that is, shall have acquired jurisdiction to take the necessary legal steps to create the district and order the improvement and let the contract.

The passage of such a preliminary resolution is the usual practice in many states, and the courts in all the states where a "resolution of intention" or, as it is sometimes called, "a resolution of necessity," is made the preliminary step to be taken by council, hold it to be a jurisdictional step, and if omitted then all subsequent Acts futile. (28 Cyc. 978, 1039; *Partridge* v. *Lucas,* 99 Cal. 519, 33 Pac. 1082; *San Jose Imp. Co.* v. *Auzerais,* 106 Cal. 498, 39 Pac. 859; *Pacific Pav. Co.* v. *Verso,* 12 Cal. App. 362, 107 Pac. 590; McQuillin on Municipal Corporations, secs. 1848, 1870, 1875, 1876.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On April 12, 1913, the mayor and city council of the city of Missoula passed a resolution creating special improvement district No. 23 for the improvement of that part of Pattee street extending from the north line of Second street to the south line of the right of way of the Northern Pacific Railway Company, by grading and paving the roadway and constructing necessary curbs, sidewalks, drains, *etc.* The resolution designates the boundaries of the proposed district and describes the general character of the improvement. It excepts from its operation one lot and a portion of another belonging to the United States, and provides that the expense of the improvement in front of this property shall be paid out of the general fund of the city. It further provides that the cost of paving that portion of the roadway occupied by the tracks of the Missoula Street Railway, and to the width of one foot on either side thereof, shall be paid by the railway company. The entire cost to lot owners, after making the deductions referred to above, is estimated to be $63,500 and is to be assessed to the lots in the district in proportion to their area; corner lots, however, to be assessed in double the amount of inside lots. The amount assessed against each lot is to be paid in twenty equal yearly installments, with interest at six per cent. Notice of the passage of the resolution was published for five days in the "Daily Missoulian," a newspaper published in the city, and a copy thereof was mailed to all persons owning lots in the district. The notice described in general terms the character of the improvement, its estimated cost, and designated a time at which the council would hear protests. Thereafter protests filed by certain lot owners with the city clerk within fifteen days after the first publication of notice, having been overruled as insufficient, an ordinance was passed creating a fund to meet the expense of the improvement, setting aside all moneys collected yearly from the assessments and becoming due from the city to pay the amount allotted to it. All warrants issued in payment for the

work, upon its completion, with interest, are to be paid out of this fund. No resolution was thereafter passed creating the district or ordering the improvement to be made. In the meantime, plans and specifications having been prepared by the city engineer, they were approved by the council and the clerk was directed to publish notice inviting sealed proposals from contractors to install the improvement. This was done. Proposals were submitted by several contractors, among them defendant McGuire. When they were opened, that of McGuire was deemed to be the lowest and best bid. Accordingly, the contract was let to him. Thereupon the plaintiffs, the owners of lots subject to assessment, brought this action to enjoin the city and McGuire from executing or carrying out the contract. Upon the filing of the complaint the court issued an injunction *pendente lite.* After a hearing upon the issues made by the pleadings, a decree was entered making the injunction perpetual and awarding plaintiffs their costs. Defendants have appealed.

The plaintiffs assail the validity of the proceedings of the mayor and council in many particulars, and counsel on both sides have filed elaborate briefs submitting many questions for decision. Since it is apparent, however, from the foregoing statement that, in view of the provisions of the statute dealing with the subject of special improvement districts, the proceedings were void from their inception, it will be necessary to discuss but two questions:

1. Has the council of a city power to create special improve-
[1]   ment districts for the purpose of improving the streets therein and to charge the abutting property by special assessments for the cost of the improvement? This query is answered by reference to subdivisions 6 and 80 of section 3259 of the Revised Codes, which have been a part of our statute law for many years. The former grants to cities and towns the power "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds, and vacate the same." The latter authorizes them: "To create special improvement districts, des-

ignating the same by number, to extend the time for payment of assessments levied upon such districts for the improvements thereon for a period not exceeding three years; to make such assessments payable in installments and to pay all expenses of whatever character incurred in making such improvements, with special improvement warrants, which warrants shall bear interest at a rate not to exceed six per centum per annum.'' By subsequent legislation subdivision 80 was amended so that the special assessments might be paid in eight annual installments, with interest on the deferred payments. (Laws 1907, Chap. 75; Laws 1909, Chap. 127.) By the Act of 1913 (Laws 1913, Chap. 89), under which the proceeding in question here was had, the limit was further extended so that the assessments may now be made payable in equal annual installments not exceeding twenty in number, with interest on deferred payments. In none of these provisions is specific reference made to subdivision 80, *supra;* but the result of them has been an amendment of it by necessary implication.

It is argued by counsel for plaintiffs that these provisions were by implication repealed by the Act of 1913, *supra.* The purpose of this Act was to repeal the several sections of the Code providing the mode of creating special improvement districts, which were in many respects inharmonious and incongruous, and to substitute in place of them others free from these defects and providing a simpler and more practicable procedure for improving and beautifying city streets. It is true that section 2 of this Act purports to grant power to effect many improvements none of which are specifically mentioned in section 3259, *supra,* wherein the general legislative powers of cities and towns are enumerated, and that by a general clause in section 35 it repeals all Acts or parts of Acts inconsistent with any of its provisions; yet, as it does not in any way limit or circumscribe these general provisions, it may not be said to be in any sense inconsistent with them, except in so far as subdivision 80, *supra,* has been affected by it and the other legislation referred to as to the time allowed within which to pay assessments. On the contrary, the latter Act is to be construed

as a specific enumeration of the subjects included within the purview of the general grant to which the procedure prescribed by it applies. As above stated, the purpose of the Act was to prescribe the procedure by which special improvement districts may be created, not to grant powers. It cannot be maintained that, in an attempt to do this, the legislature by implication took away the power which it was providing the means to enforce. The words "and create," found in the third line of section 2, which destroy the sense of it, evidently crept into it by inadvertence during the course of its enactment. This is put beyond question when this section is compared with section 2 of Chapter 397 of the statutes and amendments to the Codes of California, enacted in 1911, of which our own statute is in many respects a literal copy. While the general rule of construction requires every word found in a statute to be given force and [2] effect, nevertheless, when words or expressions are found therein to which no meaning can be assigned consistent with the legislative intent as collected from the entire Act, such words and expressions are to be treated as surplusage and wholly disregarded. (*State ex rel. Kehoe* v. *Stromme et al., ante,* p. 25, 139 Pac. 1002; *Paxton & Hershey Irr. Canal etc. Co.* v. *Farmers & Merchants' Irr. etc. Co.,* 45 Neb. 884, 50 Am. St. Rep. 585, 29 L. R. A. 853, 64 N. W. 343; 36 Cyc. 1127.) Eliminating these words, and reading the section in the light of the other provisions of the Act, there is left no room for doubt as to the purpose the legislature intended to accomplish by its enactment.

2. Was the course pursued by the mayor and council in creating the special improvement district in substantial compliance with the provisions of the statute? Section 3 of the Act provides: "Before creating any special improvement district, for the purpose of making any of the improvements * * * authorized by this Act, the city council shall pass a resolution of intention so to do. * * * Upon having passed such resolution, the council must give notice of the passage of such resolution of intention, which notice must be published for five (5) days in a daily newspaper; or in some one issue of a weekly

paper.  *  *  *  Such notice must describe the general character of the improvement or improvements so proposed to be made and  *  *  *  designate the time when and the place where the council will hear and pass upon all protests that may be made against the making of such improvements or the creation of such district; and said notice shall refer to the resolution on file in the office of the city clerk for the description of the boundaries." Under section 5, at any time within fifteen days after the date of the first publication "of the notice of the passage of the resolution of intention" any owner of property to be assessed for the expense of the improvement may make "written protest against the proposed work or against the extent or creation of the district to be assessed, or both." The protest must be filed with the clerk.  At its next regular meeting after the expiration of fifteen days the council must hear and determine the protests.  Its determination is conclusive, "provided, however, that when the protest is against the proposed work, and the cost thereof is to be assessed upon the property fronting thereon, and the city council finds that such protest is made by the owners of a majority of the property fronting on the proposed work, or when the protest is against the proposed work, and the cost thereof is to be assessed upon the property within an extended district, and the city council finds that such protest is made by the owners of more than onehalf of the area of the property to be assessed for said improvements, no further proceeding shall be taken for a period of six months from the date when said protest was received by the said clerk of the said city council."  This protest, however, is not available if the proposed improvement is the construction of a sanitary sewer.  In such case the protest may be overruled by a majority of the members of the city council.  Section 6 declares: "When no protests have been delivered to the clerk of the city council within fifteen days after the date of the first publication of the notice of the passage of the resolution of intention, or when a protest shall have been found by said city council to be insufficient, or shall have been overruled, or when a protest against the extent of the proposed district shall have

been heard and denied, immediately thereupon, the city council shall be deemed to have acquired jurisdiction to order the proposed improvements.''

Under these provisions the successive steps to be taken in [3] creating a special improvement district are: (1) The passage of the resolution of intention; (2) the publication of the required notice; (3) the hearing and determination of protests,· when any are filed by property owners whose property is to be assessed for the cost of the work and material necessary to be incurred; and (4) the ordering of the proposed improvement. The first three steps are jurisdictional, for section 3 declares: ''Before creating any special improvement district  *  *  * the city council shall pass a resolution of intention so to do.'' And section 6 declares when jurisdiction has been acquired to order the work to be done; that is, to take the final step resulting in the creation of the district and fixing upon the property included therein, a charge for the amount which·the improvement will cost. It is only after the lapse of fifteen days from [4] the publication of notice and after all protests have been disposed of adversely to protesting property owners, that the ''city council shall be deemed to have acquired jurisdiction to order the proposed improvements.''

The course pursued by the mayor and city council in this case was directly the reverse of that prescribed by the legislature, in that they first created the district and then sought to acquire jurisdiction by taking the several steps which the statute declares to be prerequisite. The rule is well settled in this jurisdiction and by the decisions generally that a municipal corporation can exercise no powers except those which are granted in express words or those necessarily implied in or incident to the powers expressly granted, or those indispensable to the objects and purposes of the corporation, and that any reasonable doubt as to the existence of a particular power is to be resolved against the corporation (*Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249; *Helena L. & Ry. Co.* v. *City of Helena,* 47 Mont. 18, 130 Pac. 446), and that, when the mode of exercising any power is pointed out in the statute granting it, the

mode thus prescribed must be pursued in all substantial particulars.  (*McGillic* v. *Corby,* 37 Mont. 249, 17 L. R. A. 1263, 95 Pac. 1063; *Carlson* v. *City of Helena,* 39 Mont. 82, 17 Ann. Cas. 1233, 102 Pac. 39; see, also, *Bolton* v. *Gilleran,* 105 Cal. 244, 45 Am. St. Rep. 33, 38 Pac. 881; *San Jose Imp. Co.* v. *Auzerais,* 106 Cal. 498, 39 Pac. 859.)  The statute having defined the measure of the power granted, and also the mode by which it is **[6]** to be exercised, the validity of the action of the legislative body of the municipality must be determined by an answer to the inquiry whether it has departed substantially from the mode prescribed.  Particularly is this true when it is engaged in making street improvements, the expense of which is to be a charge by assessment upon the property included in a special improvement district.  The power to proceed at all is a restricted and qualified power and may be exercised only upon the terms granted.  The law on the subject is well settled, so well, indeed, that no municipal officer should be ignorant of it, or fail to understand that a special improvement district cannot be created without observance of every requirement of the statute on the subject.

The resolution of intention is the primary step to be taken in **[7]** every instance.  It is the basis of the whole proceeding. It, with a notice of its adoption, is a condition precedent; nothing may be substituted in its place, and, though the proceedings may in all other respects conform to the requirements of the statute, the omission of it is fatal and renders all the subsequent proceedings nugatory.  (Page & Jones on Taxation, secs. 777, 830; McQuillin on Municipal Corporations, secs. 1848, 1849; 28 Cyc. 978; *San Jose Imp. Co.* v. *Auzerais, supra; Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454.)  To hold that a resolution, creating a district *in limine,* though notice of it is given, is a compliance with the statute, would be equivalent to a holding that the legislature did not mean what it said, and intended the municipality to wholly disregard the prescribed procedure and proceed by any mode it may deem advisable.

Nor is the proceeding aided in any way by the failure of any property owner to file with the city clerk his written objection

[8] to the regularity of the proceedings, within sixty days after the letting of the contract. The conclusive presumption of waiver, declared in section 13 of the Act is predicated upon the passage of the resolution of intention and the publication of the required notice as a condition precedent; and, though the section may be regarded as having a curative purpose and may accomplish this purpose so far as regards other irregularities in the proceedings, it cannot supply jurisdiction when it has not been acquired by observance of the antecedent steps necessary to acquire it. (Page & Jones on Taxation, sec. 981; *Comstock* v. *City of Eagle Grove,* 133 Iowa, 589, 111 N. W. 51; *Smith* v. *City of Buffalo,* 159 N. Y. 427, 54 N. E. 62.)

It is argued by counsel for the defendants that, though the resolution passed by the mayor and council is in form a resolution creating the district, it is in effect a resolution of intention, [9] and should be so construed. If it appeared that the mayor and council had intended it to operate as such, and this intention had been manifested by the passage of a subsequent resolution creating the district or ordering the proposed improvement to be installed, a wholly different situation would be presented. A mere informality in the resolution ought not to render the effort to acquire jurisdiction nugatory, and doubtless would not, if the subsequent proceedings in pursuance of it were in conformity with the statute. But this is not such a case, as is made clear by the fact that the resolution in question was regarded from the beginning as the only step necessary to be taken by way of legislative utterance to create the district. The defendant city has adopted the commission form of government authorized by Chapter 57 of the Laws of 1911. Under section 23 of that Chapter, an ordinance or resolution enacted as therein directed was an indispensable part of the proceedings.

Some argument is made by counsel for defendants that the views expressed above are not in harmony with the conclusion announced in *Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454, and *Ford* v. *City of Great Falls,* 46 Mont. 292, 127 Pac. 1004. In reply to this argument, it is sufficient to say that the

question presented here was not raised or considered in either of these cases.

The record discloses many irregularities in the proceedings by the mayor and council. We do not deem it necessary to notice them, because they are not likely to intervene in the new proceeding which must be instituted, if the proposed improvement is ever installed.

The decree is affirmed.                                    *Affirmed.*

Mr. Justice Holloway and Mr. Justice Sanner concur.

