COOPER ET AL., APPELLANTS, *v.* CITY OF BOZEMAN,
RESPONDENT.

(No. 3,834.)

(Submitted December 5, 1917. Decided December 18, 1917.)

[169 Pac. 801.]

*Cities and Towns—Special Improvement District—Creation—
Resolution of Intention—Insufficiency—Notice for Bids—
Contracts—Invalidity—Curative Statutes.*

Cities and Towns—Special Improvement Districts—Resolution of Intention—Insufficiency.
1. Under Chapter 89, Laws of 1913, before a special improvement district can be created, the city council must pass a resolution of intention to do so, give notice of its passage, *etc.* In an endeavor to create such a district, the council passed a resolution which proclaimed the creation of the district and an intention to assess the property liable for the cost of the improvement. *Held,* that the proceedings were void *in limine* for want of a proper resolution of intention.

Same—Insufficiency of Resolution—How not Cured.
2. Failure to pass a proper resolution of intention to create a special improvement district cannot be corrected by subsequent interpretation at the hands of the council, to the effect that the resolution passed was meant to operate as one of intention.

Same—Statutes—Liberal Construction—When not to be Indulged.
3. Where no work has been done under contracts for the installation of a special improvement, or warrants issued, the claim that a liberal and indulgent view of faulty proceedings in creating the district should be taken has no merit.

Same—When Contracts Void.
4. Contracts for the construction of special street improvements let without first giving ten days' notice for bids, and more than nine months after the award, *held* invalid as in contravention of the provisions of Chapter 89, *supra,* touching these subjects.

Same—Curative Statutes—When Ineffective.
5. The legislature has not the power to breathe the breath of life into a dead thing; hence defects of the character referred to in paragraph 1, *supra,* in proceedings necessary to confer jurisdiction upon the city council to create a special improvement district, under Chapter 89, Laws of 1913, were not cured by section 9, Chapter 142, Laws of 1915.

*Appeal from District Court, Gallatin County, in the Ninth
Judicial District; John A. Matthews, Judge of the Fourteenth
District, presiding.*

ACTION by Walter Cooper and another against the city of Bozeman for an injunction. From a judgment in favor of defendant, plaintiff appeals. Reversed and remanded.

*Mr. E. F. Bunker,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Geo. D. Pease* and *Mr. H. D. Kremer,* for Respondent, submitted a brief; *Mr. Pease* argued the cause orally.

The legislature has general curative power over void municipal ordinances. (1 McQuillin on Municipal Corporations, p. 494; *Board of Education* v. *Hyatt,* 152 Cal. 515, 93 Pac. 117.) "Acts done under and by virtue of ordinances passed by a municipal corporation, and proceedings entered into by it, within the scope of its power to act, which are void or defective by reason of some irregularity, omission or want of compliance with the law in the passage of the ordinance, may be cured and rendered valid unless there be a constitutional inhibition by a subsequent act of the legislature, where the legislature originally had power to authorize the thing done." (2 McQuillin on Municipal Corporations, sec. 707, p. 1538; *Holladay* v. *San Francisco,* 124 Cal. 352, 57 Pac. 146; *United States Mtg. Co.* v. *Gross,* 93 Ill. 483; *Marion Water Co.* v. *Marion,* 121 Iowa, 306, 96 N. W. 883; *Emporia* v. *Norton,* 13 Kan. 569; *Flynn* v. *Little Falls Electric & W. Co.,* 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; *State* v. *Starkey,* 49 Minn. 503, 52 N. W. 24; *Nottage* v. *Portland,* 35 Or. 539, 76 Am. St. Rep. 513, 58 Pac. 883.)

The legislature may confirm municipal ordinances and proceedings irregularly adopted. (*Hartzung* v. *Syracuse,* 92 Hun (N. Y.), 203, 36 N. Y. Supp. 521.) Thus while respondent contends the acts of the city council in creating said improvement district and entering into the contract with the Warren Construction Company for the paving of Tracy Avenue South in the city of Bozeman were legal, even though the same were irregular, or might be considered so, we contend that such irregular proceedings, if any, were fully cured by the legislature ac-

cording to the provisions of section 9, Chapter 142, Laws of 1915.

MR. JUSTICE SANNER delivered the opinion of the court.

Appeal from a judgment of dismissal entered in consequence of an order sustaining a general demurrer to the appellants' complaint. The relief sought was an injunction to restrain the city of Bozeman from drawing warrants or levying taxes to pay for certain improvements contemplated pursuant to proceedings had in the creation of Special Improvement District No. 79 in that city; and the question presented is whether such proceedings, as narrated in the complaint, were sufficient.

The complaint shows the following: At a regular meeting of the city council held May 21, 1914, a petition for the creation of said district signed by the owners of thirty-two per cent of the frontage involved was presented, referred to the street committee and reported back favorably. At the same meeting there was proposed, passed by aye and no vote, and approved by the mayor, Resolution No. 578, which is entitled: "A Council Resolution creating a Special Improvement District No. 79 * * * for the purpose of constructing storm sewers, grading and paving * * * Tracy Avenue South * * * and declaring it to be the intention of the city council of said city to specially assess the entire cost and expense of making said improvements against the property bordering or abutting thereon," *etc.* In the body of this resolution it is declared: "Section 1. That there is hereby created a special improvement district to be known and designated as Special Improvement District No. 79 of the city of Bozeman, * * * for the purpose of making the improvements * * * hereinafter described * * * , and that it is the intention of said city council to make such improvements; Section 3. That the character of the improvements which are to be made within said Special Improvement District No. 79 is described as follows * * * ; Section 5. That the entire cost and expense of doing all of said work and making all of said improvements * * * shall be

borne and paid for by the property bordering or abutting on said Tracy Avenue South, *etc.;* Sec. 7. That Thursday the 18th day of June, 1914, at 7:30 o'clock P. M. * * * is hereby designated as the time and the council chamber * * * as the place when and where said city council * * * will hear and pass upon all protests that may be made against the making of said improvements or the creation of said special improvement district; Section 8. That the city clerk * * * is hereby instructed to give notice, as required by law, of the passage of this resolution * * * said notice shall be in substantially the following form: 'Notice of passage of Resolution creating Special Improvement District No. 79. * * * Notice is hereby given that * * * a resolution was duly passed and adopted by said city council, creating a Special Improvement District No. 79 of said city for the purpose of constructing storm sewers and grading and paving Tracy Avenue South * * * , and declaring it to be the intention of said city council to specially assess the entire cost and expense of making such improvements against the property bordering or abutting thereon, *etc.' "* The notice provided for by the resolution was published and mailed to all the property owners within the district, and thereafter certain of said owners, including the appellants at bar, and representing nearly fifty per cent of the frontage involved, filed a timely protest which was overruled at the regular meeting of June 18. Thereupon it was moved, seconded and carried "that Council Resolution No. 578 be finally passed and adopted, that Special Improvement District No. 79 be created * * * , that the improvement particularly mentioned and described in Council Resolution No. 578 be ordered made in said Special Improvement District No. 79, and that assessments be made for the payment of the expense incurred * * * , in all respects as provided in said Council Resolution No. 578." It was then moved, seconded and carried that the clerk be instructed to advertise for bids for said work to be opened on July 2, 1914, but it was not provided how often or in what newspaper such advertisement should be published, although there

was at the time one daily and one weekly newspaper of general circulation published at Bozeman. This call for bids was never published; but the clerk on his own motion caused to be published in the daily newspaper in four successive issues, to-wit: July 3, 4, 5 and 7, 1914, a call for bids designating July 16 as the time for opening the same. Two bids were received, and on July 16 were opened, read and referred to the street committee of the council; later and at the same meeting that committee recommended the acceptance of the bid of the Warren Construction Company, which recommendation was adopted, and the mayor and clerk were thereupon directed to enter into a contract accordingly. On July 18 a suit was commenced in the district court of Gallatin county by one of the present plaintiffs, seeking an injunction to prevent the city "from proceeding with or acting under the contract with the Warren Construction Company which the city council directed its mayor and city clerk to enter into"; a temporary restraining order was issued on the 20th of July accordingly, and a hearing was had on the 28th of July; on the 1st of August, 1914, the temporary restraining order was dissolved, the application for injunction denied, and the plaintiff therein was given sixty days in which to file a bill of exceptions, but no such bill of exceptions was ever filed. Up to this time no contract for said work was entered into, nor was such contract entered into until April 29, 1915. Notwithstanding this, however, the city council on April 15, 1915, entertained a request from the Warren Construction Company for an extension of time in which to complete the work, and granted such extension to September 1, 1915. On May 12, 1915, thirteen days after the contract was let this suit was brought.

· The statute under which the proceedings purport to have been conducted (Chapter 89, Laws 1913) provides: "Before creating any special improvement district * * * the city council shall pass a resolution of intention so to do * * * . Upon having passed such resolution the council must give notice of the passage of such resolution of intention * * * . At any time within fifteen days after the date of the first publica-

tion of the notice of the passage of the resolution of intention, any owner of property liable to be assessed for said work may make written protest against the proposed work or against the extent or creation of the district to be assessed, or both. * * * When no protests have been delivered to the clerk of the city council within fifteen days after the date of the first publication of the notice of the passage of the resolution of intention, or when a protest shall have been found by said city council to be insufficient, or shall have been overruled, * * * or shall have been heard and denied, immediately thereupon the city council shall be deemed to have acquired jurisdiction to order the proposed improvements. * * * Notice inviting proposals (for bids), and referring to the specifications on file, shall be published at least twice in a * * * newspaper, designated by the council for that purpose. * * * The time fixed for the opening of bids shall be not less than ten days from the time of the final publication of said notice. * * * Said proposals or bids shall be delivered to the clerk, * * * and said city council shall, in open session, publicly * * * declare the same * * * and may award the contract for said work or improvement to the lowest responsible bidder * * * . But if said bidder neglects, fails or refuses for fifteen days after the notice of award to enter into the contract, then the city council, without further proceedings, shall again advertise for proposals or bids, as in the first instance, and award the contract for said work to the then lowest regular bidder. Should no bids be received in response to this second call * * * the council may again advertise for bids under the same proceedings at any time within six months from the time set for the last reception of bids, and let the contract to the then lowest bidder."

A comparison of these provisions with the proceedings had [1] and done will disclose that none of them were observed, and—taking the allegations of the complaint as true—that neither the present nor any contract for this work can be upheld. The proceedings were void *in limine* for want of a resolu-

tion of intention. By no reasonable construction can Resolution No. 578 be considered as such. It proclaims a fact accomplished, to-wit: the creation of the district; it expresses but one intention, to-wit: the intention to assess. True, it directs that notice be given to property owners for the purpose of inviting protests, but that notice, too, proclaims the same fact accomplished, the same intention to assess; and thus it puts the protests in the attitude of a sort of referendum rather than as a right to be met and satisfied before jurisdiction could be acquired. The record here discloses that the owners of at least eighteen per cent of the frontage involved neither petitioned nor protested. Had any considerable proportion of them protested, the proceedings would have been at an end; yet they might well have assumed that to protest against what they were notified had already been done would be a futile thing. That Resolution No. 578 was not a resolution of intention and that no jurisdiction to make the improvements can be founded upon it, was most elaborately shown in *Shapard* v. *City of Missoula*, 49 Mont. 269, 141 Pac. 544 *et seq.*, to which nothing need be added.

It is insisted, however, that jurisdictional foundation exists for the proceedings in question under the following *dictum* found in the *Shapard Case:* "If it appeared that the mayor and council had intended it [the original resolution] to operate as such [*i. e.*, as a resolution of intention] and this intention had been manifested by the passage of a subsequent resolution creating the district or ordering the proposed improvement to be installed, a wholly different situation would be presented. A mere informality in the resolution ought not to render the effort to acquire jurisdiction nugatory, and doubtless would not, if the subsequent proceedings in pursuance of it were in conformity with the statute." The answer is: No mere informality in the original resolution is here involved; the language of Resolution 578 does not permit the inference that at the time it was passed, the council designed it as a resolution of intention merely; the subsequent proceedings do not imply a construction of Resolution 578 as designed for a resolution of intention, any more than

they imply a consciousness on the part of the council that a mistake had been made which they then undertook to rectify; the motion to finally pass a resolution which had been finally passed, approved and promulgated twenty-eight days before, and ordering the work done, was not a resolution creating the district [2, 3] or ordering the proposed improvement; failure to take the initial step in such a way as to form the basis for jurisdiction cannot be corrected by subsequent interpretation of that step by the city council; and finally, the considerations which might call for a liberal and indulgent view of the proceedings, to-wit: that warrants had issued, or the work was done, are not present in this case.

Even if the initial steps had been valid, this contract could [4] not be upheld, because the ten days' notice for bids was not given, and because the contract was not entered into until more than nine months after the award. With relation to the notice it is said that only two days' publication was required by law, and that the time fixed for receiving bids allowed ten days after the second publication; this ignores the fact that the council could have required four publications, that the time must run from the last publication, and that the publication as made, with the time set, does not appear to have been authorized at all. The delay in entering into the contract is sought to be met by the assertion that there is nothing to show the Warren Construction Company had neglected or refused to enter into the contract within six months of the award, and that plaintiffs here cannot plead the delay because of the suit instituted on July 18, 1914; but this is unavailing, because the complaint clearly shows a *failure* to enter into the contract, because the suit constituted no obstacle to the making of the contract, and because such obstacle, if any was created, was removed on August 1, 1914, nearly nine months before the contract was made.

Finally, respondent invokes the provisions of section 9, Chapter 142, Laws of 1915, as curative of all the defects pointed out [5] in the complaint. For present purposes it may be as-

sumed that these provisions are ample to cure all mere irregularities, and that they cover with their protecting mantle all such failures as are here recorded when they occur after proceedings sufficient to confer jurisdiction; yet, certain it is that the legislature cannot breathe the breath of life into a dead thing. (*Davidson* v. *Wampler,* 29 Mont. 61, 74 Pac. 82; *Mc-Cillic* v. *Corby,* 37 Mont. 249, 17 L. R. A. (n. s.)˙1263, 95 Pac. 1063; *Shapard* v. *City of Missoula, supra; Horsky* v. *McKennan,* 53 Mont. 50, 65, 162 Pac. 376.)   Upon the showing made by the complaint, Improvement District No. 79 died a-borning for want of a resolution of intention, for want of jurisdiction to proceed any further or to make any mistakes that could be rectified by the curative Act.

The judgment appealed from is reversed and the cause is remanded, with directions to overrule the demurrer to the complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied January 17, 1918.