WILBUR E. SMITH, HERBERT SIMMONS, and BERT H. VAN DYKEN, Plaintiffs and Respondents *v.* CITY OF BOZEMAN, a Municipal Corporation, Defendant and Appellant.

No. 10602

Submitted September 18, 1964. Decided January 29, 1965.

398 P.2d 462.

Ben E. Berg, Jr. (argued), Bozeman, for appellant.

Allen L. McAlear and H. A. Bolinger, Jr. (argued), Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the City of Bozeman from a judgment of the district court restraining the City from valuing, assessing, and levying taxes based upon an assessment for improvements done in Special Improvement District No. 421, and further, ordering the taxes previously paid under the assessment returned to the plaintiffs with interest at six percent.

Three separate suits were filed by the plaintiffs, residents of the improvement district, to recover the assessments paid under protest and to have the assessments levied against their respective properties declared null and void and not a lien against their property. The cases were consolidated and tried to the court on an agreed statement of facts.

On April 12, 1961, the Bozeman City Commission passed and adopted Resolution No. 1013, a resolution of intention to create a special improvement district to be known as Special Improvement District No. 421, for the purpose of installing curbs, gutters, and pavement on Sixth Avenue extending for two blocks from Villard Street to Durston Road and for one block on Short Street between Sixth and Seventh Avenues.

Notice of the adoption of the Resolution of Intention was

given and within the fifteen days required by section 11-2206, R.C.M.1947, the plaintiffs submitted written protests to the clerk of the city commission.

At the commission meeting on May 3, 1961, the city manager reported that only 36.099 per cent of the property within the proposed district, as computed by the office of the city engineer on the basis of actual area, was represented by valid protests filed by property owners opposed to the creation of the district. The total area of the improvement district was 211,414.70 square feet. Of this area, the plaintiffs, who were the only timely protestants against the creation of the district, owned a total of 76,320.1 square feet or thirty-six percent of the total area.

Based on this finding of the insufficiency of the protests on an actual area basis, the city commission on May 10, 1961, passed and adopted Resolution No. 1017 creating Special Improvement District No. 421. The minutes of the city commission meeting for May 10, 1961, indicate that the assistant city attorney informed the Commission that there was a serious legal question as to whether the protests should be considered on an area basis or on a lineal frontage basis. Without resolving this problem, the City let the contract for the improvements.

On October 18, 1961, after the improvements were completed, the city commission provisionally passed Resolution No. 1034 assessing the cost of the improvements against all of the property in Special Improvement District No. 421 as an extended district. The district in question was classified and assessed as an extended district by the city commission, but when the notice of intention to create the district was given, the City did not consider protests on an extended area basis.

Notice of the passage of the Resolution of Assessment was given in the manner prescribed by section 11-2223, R.C.M.1947, and when no protests were made the Resolution of Assessment was adopted.

Within the sixty day limit established by section 11-2239,

R.C.M.1947, the plaintiffs commenced these suits to recover the assessments paid under protest.

From the adverse judgment on appeal, the defendant City sets out twenty-one specifications of error which, in the written brief and oral argument, were resolved into four questions.

The first question we must decide is whether the owners of more than forty percent of the area of the property to be assessed protested against the proposed improvements.

The protest statute, section 11-2206, insofar as it pertains to this case, states:

"(1) At any time within fifteen days after the date of the first publication of the notice of the passage of the resolution of intention, any owner of property liable to be assessed for said work may make written protest against the proposed work, or against the extent or creation of the district to be assessed, or both. * * *

"(2) At the next regular meeting of the city or town council or commission after the expiration of the time within which said protest may be so made, the city or town council or commission shall proceed to hear and pass upon all protests so made, and its decision shall be final and conclusive; provided * * * when the protest is against the proposed work, and the cost thereof is to be assessed against property fronting thereon, and the city or town council or commission finds that such protest is made by the owners of more than forty percent of the property fronting on the proposed work, or when the protest is against the proposed work, and the cost thereof is to be assessed upon the property within *an extended district,* and the city or town council or commission finds that such protest is made by the owners of more than *forty percent of the area of the property to be assessed* for said improvements, no further proceedings shall be taken for a period of six months from the date when said sufficient protest shall have been received by said clerk of the city or town council or commission; * * *." (Emphasis supplied.)

In the plain language of the statute, if the owners of more than forty percent of the area of the property to be assessed protest against either the extent or creation of the district, the City is without jurisdiction to proceed with the improvement. Hensley v. City of Butte, 36 Mont. 32, 92 P. 34; Shapard v. City of Missoula, 49 Mont. 269, 141 P. 544.

The jurisdiction of a city or town to continue creating an improvement district was discussed in Hawley v. City of Butte, 53 Mont. 411, 413, 164 P. 305, where this Court said: "Our statute [§ 11-2207, R.C.M.1947] is somewhat peculiar, in that jurisdiction to proceed with the improvement is not conferred upon the city until it has first determined that a sufficient protest is not before it."

The answer to the first question requires an interpretation of the phrase "area of the property to be assessed" as used in section 11-2206 to describe the property owners who may protest against the creation of an extended improvement district. Although the statutes of several states are worded in similar terms, there does not appear to be any court decisions interpreting those words.

The City's position as to the meaning of the words is well reflected in certain portions of the Resolution of Intention:

"Section 5—Method of Assessment. The preliminary estimate of cost set forth above is, to be assessed on the *area basis*, with the first 25 feet of each lot next and adjacent to the improvement being recorded at double its actual area in computing the *assessable area* of each lot. On this basis *the assessable area of the district is* 299,163.20 square feet." (Emphasis supplied.)

"Section 6—Actual Area of District. The actual area of the district as prescribed is 211,414.70 square feet, and *protests will be considered on an actual area basis*." (Emphasis supplied.)

Thus the City, in considering the protests, equated the "actual area" of the district with the "area of the property to be assessed," as used in the protest statute. Using this reason-

ing and based on the fact that the protestants owned 76,320.10 square feet or thirty-six percent of the "actual area," the City determined that the plaintiffs' protests were insufficient.

The position taken by the plaintiffs and the district court was that the phrase "area of the property to be assessed" should be equated with the "assessable area" that is, the area actually assessed to pay the cost of the improvements. Using this interpretation of the phrase from section 11-2206 and based on the fact that the protestants owned 131,312.8 square feet or forty-three percent of the assessed area, the district court found that the protests were sufficient and the City was without jurisdiction to create the district.

We think the correct meaning of the language in question can be determined by reference to section 11-2214, R.C.M.1947, which establishes the method of assessing the cost of improvements upon the property owners in the improvement district. The language of the statute, as it pertains to this case, says:

"To defray the cost of the making of any of the improvements provided for in this act, *the city council or commission shall adopt one of the two following methods of assessment*:

"(a) The city council or commission shall assess the entire cost of such improvements against the entire district, each lot or parcel of land within such district to be assessed for that part of the whole cost which its area bears to the area of the entire district * * *. In order to equitably apportion the cost of any of the improvements herein provided for between that land within the district which lies within twenty-five (25) feet of the line of the street on which the improvement is to be made and all other land within the district, the council or commission may, in the resolution creating any improvement district, provide that the amount of the assessment against the property in such district, to defray the cost of such improvements, *shall be so assessed that each square foot of land within the district lying within twenty-five (25) feet of the line of the street on which the improvements therein provided for are made*

*shall bear double the amount of cost of such improvements per square foot of such land that each square foot of any other land within the district shall bear.*

"(b) The city council or commission shall assess the cost of such improvements against the entire district, each lot or parcel of land within such district, bordering or abutting upon street or streets whereon or wherein the improvement has been made, in proportion to the *lineal feet* abutting or bordering the same; *provided, however, that this method of assessment shall not apply to assessments in improvement districts created under the provisions of section 11-2205 of this code * * *.*" (Emphasis supplied.)

█ This language shows that "the area of the property to be assessed" depends upon the method of assessment used by the City. Since there is a direct correlation between the protest statute and the assessment statute, the protests must be considered on the same basis as the assessments are made.

When subdivision (a) of section 11-2214 is used and the assessment is based on total area, then the protests should also be considered on a total area basis. In this case the City considered the protests on the total area basis but assessed the property on an extended area basis. When the city commission follows the procedure in subdivision (a) of section 11-2214 for assessing an extended district, then the protests should also be considered on an extended area basis.

█ When the assessment is based on lineal feet as provided in subdivision (b) of section 11-2214, then the protests must also be considered on a lineal frontage computation. This correlation between the method of assessment used and the manner of considering protests is clearly shown in section 11-2206, subd. (2), where the protest statute states that if the cost is to be assessed against the property fronting on the improvements, then the protests must be considered on a front footage basis. However, the City in this case was precluded from using the lineal foot method of assessment because Sec-

tion 5 of the Resolution of Intention describes an extended improvement district within the provisions of section 11-2205, R.C.M.1947. The language of section 11-2214, subd. (b), clearly states that the lineal method of assessment shall not apply to extended improvement districts. The language used by the City in the Resolution of Intention carefully describes an extended improvement district, and this same language therefore precludes any consideration of protests or assessments on the lineal frontage basis.

Since the City could only consider the protests on an area basis, the only question now to be resolved is whether the City used the correct area when determining if a sufficient number of property owners had protested. As clearly shown by Section 6 of the Resolution of Intention, the City did not consider or give any weight to the doubled area of assessment when the sufficiency of the protest was determined.

 The theory upon which a municipality may levy assessments for special improvements is that the property will be benefited by the improvements to the extent of the burden imposed. City of Butte v. School District No. 1, 29 Mont. 336, 74 P. 869; Power v. City of Helena, 43 Mont. 336, 116 P. 415; State ex rel. City of Great Falls v. Jeffries, 83 Mont. 111, 270 P. 638. Thus, the double assessment of a part of the district is because of the greater benefit. Under this theory, the protests must be weighed in the same manner as the assessments to give a greater voice to those who pay a greater amount of the tax.

On appeal, the City recognizes and admits that the twenty-five foot area next and adjacent to the improvements should be doubled for purposes of considering protests if it is doubled for purposes of assessment. But now the City claims there was an error in their original computation and the "assessable area" should be 263,293.33 square feet instead of 299,163.20 square feet. Using this new figure the protestants would own less than 40 percent of the "area of the property to be assessed." The City apparently did not arrive at this new figure until

the litigation was commenced in the district court because from the first step taken to create the improvement district, publication of the Notice of Intention, through the last step, passage of the Resolution of Assessment, the City used 299,163.-20 square feet as the "assessable area" of the district. This was the figure which the protestants relied upon in making their protests, and, this was the figure which the City used to assess the cost of the improvements on the land owners. Of that area the protestants owned 131,312.8 square feet or 43.89 percent of the area actually assessed.

Based on these figures the district court found that more than 40 per cent of the property owners had protested and the City of Bozeman did not have jurisdiction to pass Resolution No. 1017 creating Special Improvement District No. 421.

We agree with the finding of the district court. When the plaintiffs, owners of more than 40 percent of the "area of the property to be assessed" protested against the creation of the district the City was without jurisdiction to continue, and should not have taken steps to complete the improvements. Hawley v. City of Butte, 53 Mont. 411, 164 P. 305; Cooper v. City of Bozeman, 54 Mont. 277, 169 P. 801; Almas v. City of Havre, 70 Mont. 33, 223 P. 896.

When the city commission proceeded to create a special improvement district, notwithstanding the fact that owners of more than 40 percent of the area of the property to be assessed had protested against the proposed work, the improvements should not have been made and the assessment was void. Hawley v. City of Butte, supra.

Since the city commission did not acquire jurisdiction to create Special Improvement District No. 421, we would not have to consider the other issues raised on appeal, but, we feel that it is desirable to do so in this case.

The second question in this case goes to the sufficiency of the Resolution of Intention. Did the Resolution of Intention contain all the statements required by the statutes to apprise

the plaintiffs of the City's intention to create an extended improvement district?

Section 11-2204, subd. (1), R.C.M.1947, sets forth the required contents of a Resolution of Intention: (1) the number of the proposed district; (2) boundaries of the district; (3) a statement of the general character of the improvements to be made; and (4) an approximate estimate of the cost of the improvements. This is all that is required when the area in question is an ordinary special improvement district. However, section 11-2205 is a special statute relating to the assessment of extended improvement districts and it requires the city commission to take two additional steps to have a valid Resolution of Intention for an extended district. First, the contemplated work must, in the opinion of the city commission, be either of more than local or ordinary public benefit or the cost must exceed one-half of the assessed value of the property fronting on the improvements. Second, the city commission shall, in its Resolution of Intention, declare the district in question to be the district benefited by the improvements and to be assessed to pay the costs and expenses thereof.

These additional requirements were discussed in Almas v. City of Havre, 70 Mont. 33, 223 P. 896. The plaintiff, in the Almas case, was attacking the Resolution of Intention because it did not recite the first requirement of section 11-2205, namely, that the work must, in the opinion of the city council, be of more than local or ordinary public benefit.

The plaintiffs in this case were attacking the Resolution of Intention because it did not recite the second requirement of section 11-2205, namely, that the district in question was the district to be benefited by the improvements and to be assessed to pay the costs and expenses thereof.

The second requirement of section 11-2205 was clearly stated in the Almas case, 70 Mont. at 34, 223 P. at 896, when the Resolution of Intention stated:

" 'The city council of the city of Havre, Mont., hereby finds

and determines that all real estate situated in said district will be especially benefited and affected by such improvement, and the property included within the boundaries of said district is hereby declared to be the property to be assessed for the cost and expense of making said improvement.' '' The Resolution of Intention in this case contained no such statement.

The Court in the Almas case, 70 Mont. at 35, 223 P. at 896, then distinguished between the facts necessary to be found by the council and the facts necessary to be recited in the Resolution of Intention when it said:

"Section 5227 [Revised Codes of 1921, now R.C.M.1947, § 11-2204] prescribes in detail the facts which must be made to appear in the resolution of intention to create an ordinary special improvement district. In addition to those facts, section 5228 [Revised Codes of 1921, now R.C.M.1947, § 11-2205] provides that *the notice of intention to create an extended district shall recite that such district is 'the district benefited by said work or improvements, and to be assessed to pay the costs and expenses thereof;'* but it does not require, in express terms, at least, that the resolution shall recite that 'in the opinion of the city council the contemplated work or improvement is of more than local or ordinary public benefit.' '' (Emphasis supplied.)

By this statement the court distinguished between the first requirement which the city council must find but not necessarily recite in the Resolution of Intention, and the second requirement which the council must recite in the Resolution of Intention.

The Resolution of Intention in this case does not state either of the requirements of section 11-2205. We agree with the Almas decision that only the second requirement need be recited in the Resolution of Intention, but since it was not recited, the Resolution of Intention in this case is invalid.

To hold that it is not necessary to recite this second requirement in the Resolution of Intention would not only defeat the

distinction between ordinary and extended districts but would also, in effect, repeal section 11-2205.

When discussing the steps necessary to create a special improvement district this court in Johnston v. City of Hardin, 55 Mont. 574, 179 P. 824, stated the position of the City in these proceedings: "This tribunal [the city council] is clothed with limited powers only, and no presumption in favor of its jurisdiction will be indulged. The statute measures its authority, and compliance with the terms of the statute is a condition precedent to its right to act. [Citing cases.]"

Because the Resolution of Intention in this case was incomplete, due to the failure of the City Commission to comply with the requirements of section 11-2205, the City of Bozeman could not have obtained jurisdiction to create the improvements regardless of the sufficiency of the protests.

The importance of substantially complying with the statutory requirements for presenting a complete Resolution of Intention was well-stated in Hinzeman v. City of Deer Lodge, 58 Mont. 369, 371, 193 P. 395, when the court said: "A resolution of intention, in due form and properly adopted, is the fundamental basis upon which all further proceedings must stand. It is the essential thing which clothes the city authorities with jurisdiction to proceed with the proposed improvements."

The third question raised by the appeal concerns the method of assessment used by the City of Bozeman. Here again, the City misconstrued the language of the statute and failed to follow the statutory method for assessing property within the extended district. Section 5 of the Resolution of Intention shows that the City anticipated following the correct method of assessment, but, in fact, the transcript reveals that the proper method of assessment was not followed.

On appeal, the City admitted that their method of assessment was erroneous due to a mistake in computing the "assessable area" of the district. This mistake was carried all through the proceedings for the creation of the improvement district.

The City now maintains that the plaintiffs have waived their right to protest against this error. Yet the City asks to be allowed to reassess the property on the basis of the new figure for ''assessable area'' of the district.

Although there may be a question of waiver or estoppel under the protest provision in section 11-2223, R.C.M.1947, the estoppel would only apply to the actual assessment as stated in the Resolution of Assessment and not to the figure used as the ''assessable area'' in the Resolution of Intention for purposes of determining the sufficiency of the protests.

This fact is clearly shown by the statement from 9 A.L.R. 634, at page 636: ''If any underlying principle can be said to govern the waiver, or the loss by estoppel, of the right to object to an assessment for a street or sewer improvement, it is that a property owner cannot ordinarily waive or become estopped to urge the invalidity of an assessment which is void by reason of an inherent defect, either of jurisdiction or of procedure.''

The inherent defects in this case arose from the failure of the City of Bozeman to draft a Resolution of Intention that complied with the statutory requirements for the creation of an extended improvement district, and the failure of the city commissioners to halt the proceedings when more than a sufficient number of property owners protested against the creation of the improvements.

The standard to which a city is held in creating a special improvement district was well-stated in Shaphard v. City of Missoula, 49 Mont. 269, 279, 141 P. 544, 547, there the Court said:

''* * * The statute having defined the measure of the power granted, and also the mode by which it is to be exercised, the validity of the action of the legislative body of the municipality must be determined by an answer to the inquiry whether it has departed substantially from the mode prescribed. Particularly is this true when it is engaged in making street

improvements, the expense of which is to be a charge by assessment upon the property included in a special improvement district. The power to proceed at all is a restricted and qualified power and may be exercised only upon the terms granted. The law on the subject is well settled, so well indeed that no municipal officer should be ignorant of it, or fail to understand that a special improvement district cannot be created without observance of every requirement of the statute on the subject.''

Since the City of Bozeman did not comply with the requirements of the statutes, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DOYLE and ADAIR, concur.