LARSEN FARMS, a Corporation, Plaintiff and Appellant, v. The CITY OF PLENTYWOOD, a Municipal Corporation, and VERNON CHRISTENSEN, its Mayor, and DALE LAMPHEAR, GEORGE MEHL, SHELDON HAROLDSON, and RUDOLPH FOSS, its Aldermen, Defendants and Respondents.

No. 10869

Submitted April 22, 1965. Decided May 26, 1965.

402 P.2d 410

Ludvig Tande, Plentywood, for appellant.

J. E. Rucker, Plentywood, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This cause originated in Sheridan County. The plaintiff-appellant is a Montana Corporation and will hereafter be referred to as Larsen. The defendants-respondents are the City of Plentywood, its mayor and aldermen, hereinafter referred to as City.

Larsen commenced the litigation by the filing of a complaint for injunctive relief to prevent the City from building curbs and laying oil pavement in the City and from levying a tax or special assessment against Larsen property and to further enjoin the City from attempting to enforce any such tax.

The complaint stated two causes of action, but the first cause was abandoned and we need only consider the second cause of action.

The record discloses that Larsen is the owner in fee of 5.86 acres of land within the City, unimproved and unplatted for which Larsen paid $400 in 1947.

The City on May 18, 1964, adopted Resolution No. 315, being a Resolution of Intention to construct curbs and lay an oil process on the full length of First Avenue, one of the principal streets in the City. This resolution designated June 26, 1964, at 8:00 P. M. as the time and date for hearing and passing on protests. Larsen filed his protest and the same was overruled.

On July 6, 1964, the City passed Resolution No. 316, which created Special Improvement District No. 42. The boundaries of Special Improvement District No. 42 were declared to be all the property in lots, pieces and parcels of land lying within the boundaries of the city limits of Plentywood as all this prop-

erty was alleged to be especially benefited by such improvements. The cost of the improvements was to be $47,545.00.

It further appears that the total square feet of the city is 17,085,408 square feet, that protests were filed by owners of property, including appellant on 4,042,331 square feet and that 40 percent of the area would be 6,834,163 square feet; therefore there were insufficient protests to equal 40 percent of the total area in the district as provided for by statute.

Hearing was had before the Honorable Jack R. Loucks sitting without a jury on July 28th and 29th, 1964.

On August 1, 1964, the trial court held for the city in all particulars.

Appellant cites six specifications of error which will be discussed in two groups.

(1) The court erred in not granting a verdict following the expert testimony of Bernt Ward, County Assessor of Sheridan County and the cross-examination of the defendant Mayor of the City, under the adverse witness rule.

(2) The court erred in considering evidence of remote and indirect benefits.

It is deemed expedient to discuss these two specifications of error as a composite, in that the facts surrounding them are commingled.

The court found as a finding of fact that the proposed construction would enhance the market value of appellant's property and that it would receive corresponding physical, material and substantial benefit from the proposed construction and that the levy of taxes for the district would not constitute the taking of appellant's property without just compensation.

In approaching the analysis of the trial court's findings, in an equity case, we first recognize the familiar rule that the findings of the trial court will not be disturbed on appeal, unless the evidence preponderates against them with decisive clarity. Bell v. Bell, 133 Mont. 572, 328 P.2d 115; Schulz v. Brabender, 136 Mont. 152, 345 P.2d 1045.

The Court stated in Platts v. Platts, 134 Mont. 474, 479, 334 P.2d 722, 727: "We are considering an appeal in equity. This requires that we review 'all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, *and determine the same,*' unless new trial or further hearing be ordered in the court below. R.C.M.1947, § 93-216."

We now turn to the single question decisive of this case. Does the testimony support the findings of the trial court? Our answer for the reasons appearing hereafter must be "no."

We first address ourselves to the 5.86 acres of land, the subject matter of this cause, and its location within the City. One could reasonably assume that it would bring no thought of gracious living if a home were to be constructed upon it. It abuts the Great Northern Railway on the North. Its West boundary is the City limits and to the West across the boundary lies the old City dump. To the southwest approximately 450 feet lies the city sewer lagoon. A further dubious asset to the land in question, is the matter of ingress and egress.

Mr. Bernt Ward, County Assessor of Sheridan County for fourteen years and qualified as an expert on land value testified in part:

"Q. In your opinion, Mr. Ward, what is the value of the acreage designated on this illustrative map, which has been designated to belong to the Larsen Farms? * * * A. Between nine and eleven hundred dollars. * * *

"Q. Is there any access to this tract of land to First Avenue, which is the city property to be improved? A. You mean a direct route?

"Q. Any road through. A. Well, there is a road along the railroad track there.

"Q. In other words, you would have to go south and east for approximately two blocks and then cut across the railroad

tracks and then go approximately one more block north to get on to First Avenue? A. Yes. * * *

"Q. Would the proposed improvement along First Avenue, in your opinion, Mr. Ward, enhance the market value of this 5.86 acres that is owned here by Larsen Farms? A. No, I would not think so.

"Q. You don't feel then, that any improvement on First Avenue would alter the market value of this acreage? A. No."

The record discloses that a majority of witnesses for the City had a monetary interest in the outcome of the suit. We shall briefly summarize this testimony.

The Witness, Olaf Aashiem, a businessman, owned 30 feet of property abutting on First Avenue, the street to be paved. His tax assessment would have been about $3.00 annually for this lot.

Brit Chandler was the owner of a lot 25 feet by 100 feet on Main Street contiguous to the proposed pavement. His tax assessment for the special district would have been $14.00 annually.

Clifford Peterson has a business lot, 25 feet by 140 feet, about 100 feet from the proposed pavement. His assessment would be $14.00 annually.

Vernon Christenson as Mayor testified he operated a business about fifty feet from First Avenue. That his tax assessment would be annually $28.00. He further testified; "and it would be too big a tax burden on those that are living just on First Avenue, and since this is within the City of Plentywood, and the whole district is going to benefit, we decided to include the entire city in this special improvement district."

The record discloses that Larsen would pay a special improvement tax in the sum of $1025.00 on land which was purchased for $400.00.

Respondent city relies on Stettheimer v. City of Butte, 62 Mont. 297, 204 P. 1039, wherein this court said, "Prima facie

plaintiffs' property will be specially benefited to the extent of the charge imposed upon it, and the burden was upon the owners to show, as they have not shown, that because of some special circumstances their property will not be specially benefited, and that the city acted arbitrarily in making the assessment."

This same case commences however with this holding, "The only basis upon which special assessments for local improvements are sustained is that the particular property charged derives a *special benefit substantially commensurate with the burden imposed upon it,* and it follows that, if a particular piece of property cannot be benefited by an improvement, it cannot be made to bear any part of the cost." Emphasis ours.

In Crutchfield v. Nash, 84 Mont. 556, 564, 276 P. 938, 941, this court stated: "The theory upon which a municipality may levy an assessment for such an improvement is that the property charged receives a corresponding *physical, material, and substantial benefit from the improvement.* Power v. City of Helena, above, 43 Mont. 336, 116 P. 415, 36 L.R.A.,N.S., 39." See Almas v. City of Havre, 70 Mont. 33, 233 P. 896; Smith v. City of Bozeman, 144 Mont. 528, 398 P.2d 462.

In Smith v. City of Bozeman, supra, 144 Mont. at 536, 398 P.2d at 466, this Court stated: "The theory upon which a municipality may levy assessments for special improvements *is that the property will be benefited by the improvements to the extent of the burden imposed.* [Citing cases.]" Emphasis ours.

In Johnston v. City of Hardin, 55 Mont. 574, 581, 179 P. 824, this Court said:

"The statutes above not only qualify and limit the powers which the city council may exercise, but they define with particularity the mode in which the restricted authority may be used, and compliance with their provisions is the *sine qua non* to the creation of a special improvement district for making improvements, the expense of which is to be a charge against the property included."

One of the code sections referred to is section 11-2205, R.C.M.1947, which reads:

"*Assessment of extended district including lots not fronting on improvement.* Whenever the contemplated work of improvement, in the opinion of the city council, is of more than local or ordinary public benefit, or whenever, according to estimates furnished by the city engineer, the total estimated costs and expenses thereof would exceed one-half of the total assessed value of the lots and lands assessed, if assessed upon the lot or lands fronting upon said proposed work or improvement, according to the valuation fixed by the last assessment roll whereon it was assessed for taxes for municipal purposes, the city council may make the expenses of such work or improvement chargeable upon an extended district and which may include other lots not fronting on the improvement, and which the said city council shall, in its resolution of intention, declare to be the district benefited by said work or improvements and to be assessed to pay the costs and expenses thereof."

Under the facts presented here it does not appear that the contemplated work is of more than local or ordinary public benefit, nor that the costs and expenses would exceed one-half of the total assessed value of the lots or lands fronting upon the proposed work, and in such circumstances the action of the city council is an arbitrary abuse of its discretion. In our view, the record clearly shows that the property of Larsen would not be benefited by the improvement to the extent of the burden sought to be imposed and that such burden would be confiscatory.

The judgment is reversed and the cause remanded to the district court with direction to annul and set aside its findings, conclusions and judgment and to make and enter findings, conclusions and judgment in favor of plaintiff Larsen.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and CASTLES concur.