INTERSTATE MANUFACTURING CO., Plaintiff and Re-
spondent, v. INTERSTATE PRODUCTS COMPANY et al.,
Defendant and Appellant.

No. 11325.
Submitted March 5, 1968. Decided April 16, 1968.
439 P.2d 911.

William G. Mouat, (argued), Bruce R. Toole, (argued), Billings, for appellant.

Seth F. Bohart, Bozeman, Leo J. Kottas, (argued), Helena, for respondent.

MR. JUSTICE CASTLES, delivered the Opinion of the Court.

This is an appeal by Interstate Products Company, a corporation, hereinafter referred to as "Products" or appellant, from a judgment entered against it awarding the respondent, Interstate Manufacturing Company, a corporation, $77,695.20 as damages for loss of profits due to the alleged breach of a contract between the two companies. Interstate Manufacturing Company will hereinafter be referred to as the respondent or "Manufacturing".

This action plus another action by the same plaintiff against the same defendant for money had and received were consolidated for trial by the Honorable James D. Freebourn, sitting as judge in the eighteenth judicial district, Gallatin County, Montana. The trial was held without jury. The court below dismissed the action for money had and received, and that judgment is not appealed. However, in the action for breach of an alleged contract, an order finding facts and conclusions of law in favor of the respondent was entered and a judgment was rendered thereon in favor of the respondents.

On October 10, 1946, Interstate Products Company was incorporated for the purposes of mining asbestos ore. One of

the principal incorporators of this company was C. A. Lester who became a director of the corporation, and by action of the board of directors, President. Lester's wife, Mabel, later became a director and Secretary-Treasurer of the corporation.

C. A. Lester became the owner of 21 lode mining claims and two mill sites located near Karst, approximately thirty miles south of Bozeman. In consideration for the transfer of stock in "Products" to him, C. A. Lester sold the rights in these claims to "Products". The company's mining operations were to take place upon these claims.

On November 24, 1950, Interstate Manufacturing Company was incorporated for the purposes of producing asbestos out of asbestos ore. The capital stock in this corporation was subscribed to by C. A. and Mabel Lester and one E. F. Bunker. These three became directors of the company and later President, Vice President, and Secretary-Treasurer of the corporation respectively.

On April 10, 1956, the two corporations entered into a contract, the alleged breach of which, and consequent loss of profits to respondent, is the subject of this suit.

The pertinent portions of the contract are as follows:

"The party of the first part further agrees to deliver to the party of the second part, asbestos ore at the average rate of at least forty tons per operating day or more as may be mutually agreed upon at the party of the second part's manufacturing building at 204 South Wallace Avenue in Bozeman, Montana; and the party of the second part agrees to pay therefor as follows:

"The party of the first part further agrees to deliver to party of the second part, asbestos ore at the average rate of at least forty tons per operating day or more as may be mutually agreed upon at the party of the second part's manufacturing building at 204 South Wallace Avenue in Bozeman, Montana; and the party of the second part agrees to pay therefor as follows:

"Thirty Dollars per ton by paying Fifteen Dollars in cash and Fifteen Dollars per ton in common stock of the party of the second part until it has paid 49 percent of the share of common stock in said Interstate Manufacturing Company at the rate of Fifteen Dollars per ton and thereafter, to pay the party of the first part Thirty Dollars per ton cash for all ore delivered to them.

"The party of the first part further agrees to deliver to the party of the second part at least forty tons per day of asbestos ore from the Karst Mines, the same to be computed on the basis of annual averages and upon orders therefor by the party of the second part at the above said agreed price of Thirty Dollars per ton delivered at the second party's present mill building plant, at and when the party of the second part shall so designate."

Because of the fact that the business records of both companies were lost during the course of an audit, we have very little evidence as to how the two companies operated under the contract. In order to avoid repetition, we will review that evidence when we decide whether the contract was actually breached.

On May 6, 1958, C. A. Lester died. Mr. Bunker, who had become a director and vice president of both corporations, had died previously. It was at this point, when new people entered into the control of both corporations, that the trouble between the two corporations began to develop.

On May 16, 1958, Mabel Lester appointed one Glen Allman, as director of "Manufacturing". These two directors elected Bernard Goosen as director, whereupon Mrs. Lester resigned her position in respondent corporation. Allman and Goosen then elected Oscar Huso as a director. These directors became President, Vice President and Secretary-Treasurer respectively of "Manufacturing".

On May 31, 1958, a meeting of the Board of Directors and some stockholders in "Products" was held. Doyle Potts, who

had previously become a director of that corporation, was made acting president. Potts was later elected to this position by the stockholders of "Products" on September 9, 1958.

In May of 1958, the directors of "Manufacturing" became concerned as to the validity of the claims to the property which had been transferred by C. A. Lester to "Products." Allman and the other officers of "Manufacturing" entered upon the claim with the intention of securing the title to the claims and then transferring this title apparently to the stockholders of "Manufacturing".

Potts, fearing some attempt at "claim jumping," gave orders to the guards at the mining property that no one was to be let upon the property.

On August 8, 1958, a plant foreman of "Manufacturing" ordered a truck to be sent to the mines to pick up some ore. The truck had no loading equipment, and the mine did not either.

The watchmen at the mine, acting under Potts' previous orders to prevent claim jumping, ordered the truck off the property.

It is this refusal to load ore onto the truck which respondents contend constituted the breach of the contract in question.

The court below after hearing the evidence determined in its findings of fact and conclusions of law that there had been a valid contract between the two parties; that the contract was breached by the failure to load up the truck; and that as a result of this breach respondent suffered a loss of profits.

Appellants present to this court three arguments as to why the judgment based upon the findings of fact and conclusions of law should be reversed. These are: (1) that there was no valid agreement between the two parties; (2) that if there was a contract, there was no breach of it; and (3) even if there was a breach, the damages were not supported by evi-

dence and were so remote and speculative that they could not be awarded.

Appellant is correct in pointing out that in a long line of decisions, this court has held that we will not disturb the trial court's findings unless there is a decided preponderance of evidence against these findings. Larsen Farms v. City of Plentywood, 145 Mont. 509, 402 P.2d 410; Kosel v. Stone, 146 Mont. 218, 404 P.2d 894; Hurly v. Hurly, 147 Mont. 118, 411 P.2d 359; Duffie v. Metropolitan Sanitary & Storm Sewer Dist. No. 1, 147 Mont. 541, 417 P.2d 227; Studer Const. Co. v. Rural Special Impr. Dist. No. 208, 148 Mont. 200, 418 P.2d 865. We continue to adhere to this rule in our decision in the present case.

Though we tend to agree with the appellant that there was no valid contract between the two parties, we will not decide this point for the reason that we think there is a more obvious point upon which to base our decision.

Assuming arguendo that there was a valid agreement between the two parties, the record contains evidence which decidedly preponderates against the conclusion that there was any breach of that agreement.

A breach of a contract is defined as "a non-performance of any contractual duty of immediate performance * * *." Restatement of the Law of Contracts, § 312, p. 462. In order then to ascertain whether there was a breach in the present case it is first necessary to determine what duties were imposed upon the appellant under the contract.

The first of the pertinent paragraphs of the contract calls for the delivery by the appellant to the respondent of ore "at the average rate of at least forty tons per *operating day*." (Emphasis added.) We will assume that this provision was modified by mutual consent to call for the delivery of only twenty tons.

At first blush it would seem that this paragraph imposes an automatic duty upon the appellant, to deliver the ore, with-

out the necessity of any order by the respondent, and that his failure to do so put him in breach of the contracct.

The problem though is that the contract calls for the delivery of the ore every "operating day." We must first determine the meaning of the term "operating day" to see whether any breach occurred.

Though the contract itself gives no clue to the meaning of the term, and we are unable to find any authority defining this term we conclude that in relation to this particular contract the term means any day in which respondent's plant is operating in accordance with its purpose as expressed in the articles of incorporation, namely the carrying on of "the business of purchasing, milling, concentrating, converting, separating, treating, and preparing for market, manufacturing, buying, selling, exchanging, and otherwise producing" asbestos.

The evidence as presented not only fails to establish what the number of operating days left during the term of the contract would be, but also preponderates against the conclusion that the respondent had had any "operating days" in the past. Therefore the term is so vague and meaningless as to impose no duty upon the defendant, and thus not leave him in breach of this particular paragraph of the contract.

The minute entries of respondent corporation, the only surviving business records of the corporation, indicate that up until 1953 the corporation was still not operating commercially and that preparations were still under way to try to get the plant in production. The minute entries are silent as to what transpired from 1953 until May of 1958. The minute entries indicate that the mill was shut down on August 5, 1958, three days before the incident which constituted the so-called breach of the contract occurred.

The testimony of Mrs. C. A. Lester also indicates that the company had experienced trouble in getting into production and that it was not a going concern at the time of the alleged breach. Mrs. Lester testified that the company was having

difficulty perfecting the machinery in order to produce a commercial grade of asbestos. She also testified that as late as 1958, the year of the alleged breach, the company was still remodeling the mill.

As a matter of fact, the words "per operating day" as used in the contract were never established as a basis for any delivery. Having failed to establish that respondent company had had any "operating days" in the past, or would have any during the remaining period of the contract, no duty was placed upon the appellant by this provision, and hence there was no breach of it.

The third paragraph of the contract quoted above calls for delivery of ore to respondent's mill "upon order" of the respondent. There were no orders. The sending up of a truck to get some ore from the mine does not fulfill the requirements of an order under the contract. Consequently the appellant breached no duty under this paragraph of the contract either.

For the reason that there was no breach of the contract the award of damages by the court below was erroneous.

The judgment is reversed, and the cause is dismissed.

MR. JUSTICES HASWELL, ADAIR, JOHN CONWAY HARRISON, and THE HONORABLE LeROY L. McKINNON, District Judge, concur.