THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE
HIGHWAY COMMISSION OF THE STATE OF MONTANA,
PLAINTIFF AND RESPONDENT, *v.* ARTHUR W. DONOVAN AND
WIFE AND AS JOINT TENANTS, DEFENDANTS AND APPELLANTS.

No. 11333.
Submitted November 18, 1968. Decided December 19, 1968.
448 P.2d 671.

Keller, Magnuson & Reynolds, Paul T. Keller (argued), Helena, for appellants.

Daniel J. Sullivan (argued), John P. Poston (argued), Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal arose from a suit instituted by the State of Montana, acting by and through the State Highway Commission, to condemn certain property along west Euclid Avenue and Highway 12 located in Helena. The case was tried before a jury with the Honorable Victor H. Fall presiding. It was the duty of the jury to determine the fair compensation that should be paid the property owners for the taking.

The defendants Arthur W. Donovan and Genevieve I. Donovan, husband and wife, owned 300 feet of property which bordered on Euclid Avenue; on this property they operated a trailer sales business. The State condemned a ten foot strip of defendants' property in order to widen the road to 4 lanes, construct median barriers and place curbings with egress and ingress routes along the roadway. Defendants contend that because of the taking they can no longer operate their trailer business in this locale and have made plans to move to a new location.

Defendants maintain that the curbing makes it impossible for them to move larger trailer houses on or off their property or to jockey them into trailer hookups, which are available to buyers for their convenience. Appraisers for both parties offered testimony as to the value of the land and fixtures both before and after the acquisition of the strip by the

State. Defendants' appraisers fixed the value of the taking in the area of $43,700 to $100,250. The expert for the State stated that the total depreciation of the market value which resulted because of the taking was $11,250. The jury awarded defendants Donovan this figure of $11,250. From this jury determination the defendants appeal.

The issues presented for review on this appeal are:

1. Did the trial court err in allowing testimony as to the contents of financial statements of appellants to be introduced into evidence?

2. Whether or not evidence as to the effect on the remaining land of a special improvement district should have been included.

3. The refusal of the trial court to give appellants' instruction No. 13.

During the course of the trial counsel for appellants on re-direct examination of appellants' appraiser witness, Bryant Anderson, asked him if he had examined any annual reports on the Donovans' place of business and if he had used any information therein to arrive at his appraisal figure. Mr. Anderson answered that he did examine them but could not use the figures because he could not separate the farm and business items which were lumped together. Following Mr. Keller's re-direct, Judge Fall permitted John Poston, attorney for respondent, to question the witness as to the specifics of the annual reports. Mr. Keller objected to any interrogation along these lines because the witness, Mr. Anderson, stated he could not use the figures in his appraisal. Judge Fall ruled that since Mr. Keller had "opened the door" to evidence contained in these annual reports that Mr. Poston should be allowed to ask about specifics of the reports and inquire as to why the reports could not be used in the appraisal. Appellants' objection was based on the lack of a proper foundation being laid.

It is appellants' position that if these financial reports were

admitted they could only be admitted with the testimony of the accountant who prepared them. The reports were offered into evidence but were refused by Judge Fall after objection by Mr. Keller. Mr. Keller sought to strike from the record any testimony regarding the financial reports that had so far been offered; Judge Fall denied the request at this time. Appellants contend that it was reversible error to let the testimony regarding the reports go to the jury for consideration. When Mr. Donovan testified he identified the proposed exhibits as his income statements and said they were prepared by his bookkeeper at his request; with this foundation they were duly admitted into evidence. It should be noted that these statements were furnished the respondent without objection, pursuant to a pre-trial request for discovery. Appellants allege that since the figures taken from the statements were not used in deriving at any appraisal figure, and were introduced without putting the accountant on the stand, they had no probative value and were in themselves prejudicial.

The only figures revealed during Mr. Sullivan's and Mr. Poston's cross-examination were the profit or loss totals for the years 1962 through 1965. Appellants cite cases including Meagher v. Harrington, 78 Mont. 457, 254 P. 432 and Meredith v. Roman, 49 Mont. 204, 141 P. 643, urging us to adopt in this instance the rules set forth in those early cases. Appellants contend that since the witness, Mr. Anderson, was not the person who prepared the statements; did not testify the books were kept honestly and correctly and the figures therein were true and correct; or, that he knew the contents were derived from books kept in the usual course of business, they should not have been allowed or presented to the jury. It is true that Mr. Anderson did not and could not testify as to the foregoing facts, but Mr. Donovan did testify that the statements were prepared by his bookkeeper under his direction; that the contents were furnished to her from his business entries; that the statements were honest and correct; and, that the reports were

furnished to the State as evidence of his business transactions during the year.

Appellants and respondent agree that the appraisers of both parties did not use these financial statements in calculating their appraisal figures. We feel since Mr. Anderson did testify under Mr. Keller's questioning that the financial statements were not used in his evaluation because he could not separate the business income from that of the farm, that counsel for the respondent had every right to examine the witness as to why he could not segregate the figures and attempt to impeach him on his conclusion. The foundation laid for these documents was indeed adequate for the purpose of introducing them, especially in light of the manner in which they were used.

We do not agree with appellants' argument that a balance sheet means nothing unless it is interpreted by the accountant who prepared it. The financial statements were based on totals which were not verified by an audit but they were prepared by a certified public accountant whose integrity and accounting practices we shall not question. These were simple income statements which could be interpreted by almost anyone. For us to adopt the contention that no financial statement may be introduced without first having the accountant who prepared it explain in detail the procedure used, would in fact be creating dubious law for this state.

The next issue presented for our consideration is whether the trial court erred in excluding evidence as to the effect of special improvement district assessments upon the value of the land not taken. Appellants contend that this special tax would reduce the market value of their property and these figures should have been submitted to the jury for consideration in determining the depreciation caused by the taking. We believe the district court was correct in sustaining the respondent's objection. The general rule, which we have

adopted, is stated in Nichols on Eminent Domain, Vol. 1 § 1.41(4):

"The fact the proceeding under which an owner's property is taken is an assessable proceeding, i.e., one in which a special assessment will later be imposed upon the remaining property of the owner, is no justification for the allowance of the special assessment as an element of damage in the condemnation proceedings."

This Court has repeatedly held that if a parcel of land receives a "special benefit substantially commensurate with the burden imposed upon it" that the property owner is obligated to pay the special tax assessed upon him. Stettheimer v. City of Butte, 62 Mont. 297, 204 P. 1039; Larsen Farms v. City of Plentywood, 145 Mont. 509, 402 P.2d 410; Duffie v. Metro. San. and Storm Sewer Dist., 147 Mont. 541, 417 P.2d 227. If the property is not benefited by the special assessment then we have held that the "burden sought to be imposed * * * would be confiscatory" and there is no duty to pay the additional tax. Larsen Farms v. City of Plentywood, supra. If the appellants could have convinced the jury that their trailer lot would be actually damaged rather than improved by this special assessment then the amount of the special assessment may very well have been included as an element of damages in determining the decline in market value. Hence, the special assessment should not have been considered as an element of damages in this case.

Various states in adopting the foregoing rule have explained the theory behind it. In application of City of Lincoln, 161 Neb. 680, 74 N.W.2d 470, 472, 473, the Nebraska court said:

"The assessment of benefits for future public improvements is a separate proceeding from the condemnation of the land for a public purpose and has no relation thereto. The benefits represented by the special assessments must be paid for by the condemnee in the same manner and in the same proportion as other property owners benefited by the improvement. To per-

mit their recovery as a part of the damages in the condemnation proceeding would in effect constitute a payment of the benefits by the city and not the property owner as the law requires. The condemnee would thereby be favored by escaping the payment for benefits which other property owners, benefited by the improvement, are required to pay. Such a discrimination in favor of a condemnee has no standing law." See City of Eugene v. Wiley, 225 Or. 327, 358 P.2d 286.

It is apparent to us that the purpose of this special assessment is to enhance and improve property, not to create a detriment or devalue its worth. Hence, we see no reason to grant the appellants the relief sought in this instance. If such testimony were allowed we doubt if it would have any appreciable effect on the jury's final decision for it appears that they placed most, if not all, of their reliance on the appraiser for the respondent. In this regard the appellants were not in any way prejudiced.

Finally, it is appellants' contention that it was reversible error for the district court to give the court's instruction No. 11 while refusing to give appellants' proposed instruction No. 13. Both instructions deal with the weight to be given to the appraisers' testimony. Court's instruction No. 11 read as follows:

"A witness who has special training, education or experience in a particular science, profession or calling, is an expert and, in addition to giving testimony as to facts, may be allowed to express an expert opinion. In determining the believability and the weight to be given such opinion evidence, you may consider, among other things:

"1. The education, training, experience, knowledge and ability of the expert.

"2. The reasons given for his opinion.

"3. The sources of his information.

"4. Factors already given you for evaluating the testimony of a witness."

Appellants' proposed instruction No. 13 read:

"You are instructed that a witness is qualified to testify on property values by proof of his familiarity with the property in question and with the uses to which it may be put.

"It should appear that the witness has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally.

"Such witness need not know of any sales and he need not be a technical expert, nor be a person engaged in buying or selling real property."

Appellants maintain they were prejudiced because, with the instruction given, the jury was more apt to believe the respondent's appraiser, who had outstanding credentials and was more of an expert than appellants' appraisers. Appellants state that the instruction given made it almost mandatory for the jury to believe the witness with the better qualifications and neglect the valid testimony of their value witnesses who were, in their opinion, not necessarily experts. We find no merit in this argument.

All of the appraisers for the Donovans, except Mr. Donovan himself, had had considerable dealings in the buying and selling of real estate. In fact, the very reason the appellants called them as witnesses was because they thought the jury would believe these people because of their familiarity and dealing in the immediate area. Mr. Mihelish has been in the real estate business for 11 years; Mr. Peterson for 6 years; and Mr. Anderson for 14 years. These men are by no means novices and may realistically be called experts. The respondent's appraiser, Mr. Scott Johnson, former chief appraiser for the Montana State Highway Commission, has attended various appraisal schools, is a member of the American Institute of Real Estate Appraisers, and currently is running his own appraisal office in the state of Washington. His qualifications are indeed outwardly and esthetically more apparent

but do not necessarily make his ability to appraise better than that of his cohorts. Too, appellants' proposed instruction No. 13 would not aptly fit the facts of this case because all of the appraisers were experts. The instruction given allowed the jury to consider experience, ability, knowledge, and training of the witnesses; all of these criteria were found in the appraisers. The instruction did not prejudice the appellants simply because Mr. Johnson had had some formal schooling and belonged to a professional society. It was left to the discretion of the jury to decide which of the witnesses they wished to believe; it so happens they gave more weight to Mr. Johnson's testimony, but this is not the direct result of the giving of court's instruction No. 11. The district court's discretion in choosing the proper instructions to be given will not be disturbed unless there is inherent prejudice.

We note with approval what was said in State v. Peterson, 134 Mont. 52, 328 P.2d 617. In that case the Court held that appraisal testimony could be given by people who were not necessarily experts but they must have some basis for forming an intelligent opinion as to the value of the condemned land. As stated above, all witnesses had had experience in selling and buying property in the immediate area and had been engaged in this practice for several years. With these qualifications we feel that court's instruction No. 11 truly gave the jury the correct guidelines to follow in weighing the testimony.

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and Mr. JUSTICES HASWELL, ADAIR and CASTLES, concur.