479 P.2d 786

STATE of Utah, Plaintiff and Respondent,

v.

Ila AHRENS, Defendant and Appellant.

No. 12153.

Supreme Court of Utah.

Jan. 11, 1971.

Ellett, J., concurred in part and dissented in part and filed opinion.

Crockett, J., dissented and filed opinion.

Hatch, McRae, Richardson & Kinghorn, Sumner J. Hatch, Salt Lake City for appellant.

Vernon B. Romney, Atty. Gen., John McAllister, Asst. Atty. Gen., Salt Lake City, for respondent.

TUCKETT, Justice:

The defendant was found guilty in the District Court of Cache County of the crime of embezzlement and she is here seeking a reversal.

The defendant was a long-time employee of Logan City in various capacities. The defendant was specifically employed as a deputy city recorder. In addition to her duties pertaining to that job, she also handled the switchboard, acted as a receptionist, and with some other five employees of the city received moneys for parking meter fines, various licenses, taxes, and funds and fees pertaining to the city cemetery.

The defendant is charged with having embezzled $114 from Logan City on or about May 20, 1969. The evidence in the case indicated that on or about May 19, 1969, one Vera Makin delivered her check to the city sexton in the sum of $114, payable to the Logan City Cemetery. The check was delivered to the defendant at the Logan City Offices but the sexton was not given a receipt for the check. The check was regularly endorsed and deposited by the city treasurer and proper entries were made in the books of the city by the defendant. The cash register tape for the day in question did not record the $114 item. The defendant is accused of having taken the sum of $114 in cash from city funds. All six of the city employees who used the cash register, including the de-

fendant, testified during the course of the trial that they had not misappropriated city funds.

Over the objection of the defendant the prosecution was permitted to show that on two occasions subsequent to the date on which defendant purportedly appropriated city funds there were delays in recording and posting the receipt of city funds by the defendant. However, the prosecution failed to show that any city funds were missing on those occasions.

On the second day of the trial one of the jurors paid a visit to the city offices and while there, he went over the layout of the offices in respect to where the defendant had had her desk, where the city treasurer carried on her work, and where certain other city employees also worked. While at the city offices the juror talked with the city treasurer and some of the other personnel in and about the offices. A motion for a mistrial was made by the defendant which was denied by the court after the court had taken the testimony of the city treasurer and also that of the juror.

■ The defendant seeks a reversal upon three grounds. The defendant first contends that the city treasurer was charged with accountability and custody of city funds, and that the record fails to show that the defendant was entrusted with public moneys. It would seem that

the record supports the proposition that the defendant, by reason of her employment with Logan City, did in fact receive and receipt for various funds coming to the city coffers. Nowhere does the defendant claim that the receiving and accounting for public funds was beyond the scope of her employment. It should be noted that the provisions of the Utah statute are sufficiently broad to embrace the acts charged against the defendant. The language of the statute is as follows:

> Every officer, director, trustee, clerk, servant or agent of any association, society or corporation, public or private, who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust any property which he has in his possession or under his control by virtue of his trust, or secretes the same with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement.

Subsection (17) of Section 68–3–12, U.C. A.1953, which deals with the rules of construction of statutes has this to say in part: The words "sheriff," "county attorney," "clerk," or other words used to denote an executive or ministerial officer, may include any deputy, or other person performing the duties of such officer, either generally or in special cases; * * *. We therefore conclude that the charge here made against the defendant

was properly laid under the provisions of the statute above referred to.[1]

■ The second claim of error by the defendant goes to the misconduct of the juror in visiting the city offices and talking to the employees of the city. We are of the opinion that this contention of the defendant is meritorious and requires a reversal. If the efficacy of the jury system is to be preserved the courts cannot permit individual jurors to make private and individual investigations of the facts of the case they are impaneled to decide. We have no way of determining whether or not the conduct of the juror influenced his judgment in arriving at a verdict. We adhere to the rule stated in prior decisions of the court that the law requires of the juror such conduct during the time that his verdict may be above suspicion as to it having been influenced by any conduct on his part during the trial.[2] The conduct of the juror in this case goes beyond that of the usual amenities between jurors and acquaintances who appear upon the scene.

■ In view of the fact that this case must be returned for a new trial, we deem it appropriate to comment on the defendant's third claim of error dealing with testimony concerning other discrepancies in the accounts and records of the defendant which the prosecution contends it is admissible to establish an intent, scheme or motive to misappropriate funds. The evidence fails to disclose that any funds were missing, and viewed as a whole, do not support the claim that the discrepancies show a scheme on the part of the defendant to misappropriate public funds. It would seem to us that the evidence goes no further than to show errors in procedures in keeping the records of the city. The evidence does not show or tend to show either the guilt or innocence of the defendant and should have been excluded.

We are of the opinion that the court below erred in failing to grant a mistrial and the case is remanded to that court for a new trial.

CALLISTER, C. J., and HENRIOD, J., concur.

ELLETT, Justice (concurring and dissenting):

I agree that the judgment of conviction should be reversed but not for the reasons stated in the prevailing opinion.

While I think the conduct of the snooping juror was improper, I do not think it had any effect on the verdict rendered. There was no personal contact made by the

1. State v. Dubois, 98 Utah 234, 98 P.2d 354.

2. State v. Anderson, 65 Utah 415, 237 P. 941; State v. Crank, 105 Utah 332, 142 P.2d 178.

errant juror and no conversation had with anyone which would tend to make for a biased or otherwise improper verdict.

The testimony of the Logan City treasurer regarding the incident was as follows:

> I was in my office and I had a little gal on the switchboard came in my office. I was giving her some work to do, and I had some money on my desk, and he walked to the doorway and he said, "How. about letting me have about half of that?" or something to that effect. And I just said, "Okay, I'll split half with you." I says, "Only there are some strings attached." And he just kind of smiled, you know, but he didn't leave. And he may have—he walked back through the office and walked—and as I understand it later talked to both Mr. Jones and one of the other girls that was working there. He was looking over the plan of the office, according to the way I had drawn this. When he come back to my office, this is what he said. And I didn't know who he was. He looked familiar. And he asked me if I was Ila's —if I had told her what to do, or if I was her boss or something like this, and I said no, I was only answerable to the mayor and no one—I didn't say no one worked under me, but I just says I was answerable to the mayor, and Ila, I said there was possibly confusion on this. I said she was either answerable to Mr. Beck or Mr. Jones. This I do not know. And then it dawned on me possibly who he was and I kind of sat back and I didn't say anything else and he just kind of wandered around. Then he walked back out to the front and one of the little gals came down and she said, "What did he want to know?" And I said—I wasn't sure for sure then who it was, and I said, "Who was he? Was he a jury member?" She said he walked in and he said "I'm a jury member and I'd like to know where Ila sat." So we just told him, and he walked down to the office. And then this is where he proceeded to go through the office. And on leaving he came up and he walked out and he said to her, "Yes, I've seen it all, and I feel sorry for Donna Bodrero," and he walked out of the door.

\*　　\*　　\*　　\*　　\*　　\*

> He did say, in regards to this, he walked through the offices and he said, "You cannot see Ila from many of these offices." And I said, "No, not directly." They're just at an angle enough that you can't observe anyone in any particular office. And that was it.

Ordinarily the granting of a mistrial lies within the sound discretion of the trial judge. Here the trial judge stated:

> The motion for a mistrial will be denied. I agree that it is an unauthorized

contact and is misconduct on the part of the juror, shouldn't be done, and it is not conducive to receiving the evidence that he should consider in arriving at a decision, that it is outside of the court. But what we have heard from the juror and from the witness, that his contact was one that I don't think will materially cause prejudice either to the state or to the defendant to the extent that it is grounds for a mistrial. It appears his purpose was to view the scene of the office and its structure as was drawn on the board. What he might have seen and viewed there and learned from this observation, I don't feel is such a departure from what the evidence is or that there's anything that would materially bias or prejudice him in favor of one party or the other, and for that reason I deny the motion.

I do not believe that he abused his discretion in denying the motion for a mistrial. As soon as he learned of the improper visit of the juror to the office where the defendant worked, he permitted the entire panel to take a view of the office and thus all of the jurors saw what the first one had seen. I therefore would not reverse the judgment because of the impropriety of the juror, who doubtless only wanted to obtain a better understanding of the lay of the office than he had gotten from the diagram drawn by the city treasurer when she testified as a witness.

My reason for reversing the judgment is because the proof shows that the crime committed was larceny and not embezzlement.

Larceny is a crime against possession while embezzlement is one against custody. The problem here involves a determination of whether the defendant had possession of the cash which she took from the till or the mere custody thereof.

The till was under the care, control and direction of Logan City through Mrs. Bodrero, the treasurer. It was the place where the city caused the cash to be stored for a week at a time before it was taken from the till by Mrs. Bodrero and deposited in the bank.

As soon as money was placed in that till it was in the *possession* of the city and the defendant only had the custody thereof. Any abstraction of funds therefrom by the defendant would therefore be larceny and not embezzlement. When she received the check, equal in amount to the money appropriated to her own use, she received it for and on behalf of her employer, Logan City. Had she misappropriated that check before placing it in the receptacle provided for it by the city, to-wit: in the till, she would have embezzled it, for she received the custody of it for and on behalf of her employer. She did not keep the check, however; she placed it in the till and then took an equal amount of cash from the till.

The law is stated in 26 Am.Jur.2d, Embezzlement, Section 5, as follows:

> Fine distinctions between custody and possession have been drawn in cases involving the placing of money received by an employee from a third person into a till. It has been held that an employee's possession of money received from a third person sinks to the level of mere custody when the employee places the money in a till, and a subsequent appropriation of the money by him constitutes larceny.

In the case of Nolan v. State, 213 Md. 298, 131 A.2d 851, a loan company maintained a cash drawer in which money was deposited as received. It was held that when money was taken out of that cash drawer by the defendant, who had the right of access thereto, he could not be convicted of embezzlement.

In Warmoth v. The Commonwealth, 81 Ky. 133, the trial court instructed that if the defendant received money as clerk or agent, then the money was in the possession of the employer, and if the defendant took it, etc., he was guilty of larceny. The appellate court reversed the conviction of larceny saying:

> Generally, where the agent has received goods or money to carry, deliver, control, or manage for the principal, unless the agent parts with the manual possession, and delivers the property to the principal or another for him, or places it is some depository, such as a drawer or safe provided for the purpose, and to which the principal or superior agents have access, or over which they have control, he cannot be convicted of larceny for a felonious appropriation of the goods or money, the offense being embezzlement. (Johnson v. Commonwealth, 5 Bush [430], page 431.)

In the case before us if the appellant, after he received and receipted for the money, deposited it in the safe provided by Shain, and then feloniously extracted the money from the safe, and carried it off, his offense was grand larceny, for the possession of Shain was also the possession of the company.

In Reg. v. Wright, etc., 27 L.J.M.C. 65, 169 Eng.Rep. 1070, 1074, the defendant was employed by a bank to open and conduct a branch in another town. It was the duty of the defendant to place money received by him in an office safe provided by the employer. The defendant was 3,000 pounds short. Lord Campbell in affirming a conviction of larceny said:

> When the money was placed in that safe, which was furnished by the employer, and of which the employer had a duplicate key, the exclusive possession of the prisoner was determined. The money being so deposited in the safe and afterwards taken out of the safe by the prisoner *animo furandi,* he was guilty of

larceny. The safe in this case very much resembles a till in a shop. The shopman has access to the till, and has a right to take money out of it for lawful purposes, but if he takes it out *animo furandi* he is a thief.

Judge Crowder added:

The fact that the prisoner had the entire control over the premises makes no difference. If he took the money from the safe for the purposes of the bank, he did so as party of his duty; but if he took it for his own purposes he was guilty of larceny.

While it is true that larceny and embezzlement may be charged in the same information [1] as set out in Justice Crockett's opinion, still that does not permit one to be convicted of the wrong crime. The jury is not permitted to choose the crime; only the evidence will determine that. Had larceny and embezzlement been charged in the instant case, it would have been the duty of the judge to instruct the jury that if the money had been feloniously taken from funds theretofore deposited in the till of the employer, they could not find the defendant guilty of embezzlement.

The State is in control of the evidence and in this case when the State had rested, the defendant properly moved for a dismissal of the charge of embezzlement, and in my opinion it should have been granted.

Failing to grant the motion was error and I would therefore reverse this conviction with directions to the trial court to dismiss the information.

CROCKETT, Justice (dissenting):

I dissent from reversing the judgment. As to the ground relied upon by the main opinion, misconduct of a juror, I am in accord with the explanation and conclusion drawn by Justice Ellett: that we should not hold it to be reversible error. It is not shown, nor is there, in my judgment, any reasonable basis for believing, that the impropriety committed by the admittedly nosy juror had any effect adverse to the defendant on the outcome of the trial; nor that there is a reasonable likelihood that in its absence there would have been a different result. The trial judge has a far better opportunity to judge the possible effect of irregularities of this character than do we; and that is the reason for the usual rule which allows him considerable latitude of discretion in that regard.

However, as to reversing the case on the basis of the distinction between larceny and embezzlement, I am unable to agree with Justice Ellett. I appreciate that fine distinctions between the two crimes may be made because of niceties of difference in fact situations. But if we look upon the evidence and the inferences which reason-

1. 77–21–31, U.C.A.1953.

ably can be drawn therefrom in the light favorable to the view taken by the trial court and the jury, as we should do, I think the verdict of guilty of embezzlement should be sustained. As a precaution against the difficulty which has arisen here, larceny and embezzlement could have been charged jointly as was done in State v. Shonka, 3 Utah 2d 124, 279 P.2d 711. But the difficulty with the accusation of larceny in the instant case, and undoubtedly the reason that offense was not so charged, is that the rule universally recognized is that larceny necessarily involves a *trespass* and a taking of property of another against his will and without his consent. It is so stated at 52A C.J.S. Larceny § 21 at 441, and also at 50 Am.Jur. 175; see also the Shonka case referred to above; State v. Allen, 56 Utah 37, 189 P. 84; Loney v. United States, 10 Cir., 151 F.2d 1. That rule seems to preclude making out larceny against this defendant where she had free access to open the register and handle the money. Under proper instructions as to the elements necessary to make out the crime, the jury found her guilty of embezzlement.

Applicable to both of the points I have stated above is the requirement of our statute, Sec. 77–42–1, that "After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to have resulted in prejudice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment." See State v. Neal, 1 Utah 2d 122, 262 P.2d 756, 759; State v. Sinclair, 15 Utah 2d 162, 398 P.2d 465.

I would therefore affirm the judgment.